**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Earl W. WOLFE, Respondent.**

**SCBD No. 4006.**

Supreme Court of Oklahoma.

June 18, 1996.

As Corrected on Denial of Rehearing July 16, 1996.

Dan Murdock, Janis Hubbard, Oklahoma Bar Association, Oklahoma City, for Complainant.

Craig Tweedy, Sapulpa, for Respondent.

HODGES, Justice.

## I. PROCEDURAL HISTORY

The Oklahoma Bar Association (OBA) filed a complaint against Earl W. Wolfe (Wolfe or Respondent) on June 2, 1994, alleging seventeen counts of misconduct in violation of the Oklahoma Rules of Professional Conduct, Okla. Stat. tit. 5, ch. 1, app. 3–A (1991) (hereinafter ORPC), and the Rules Governing Disciplinary Proceedings, Okla. Stat. tit. 5, ch. 1, app. 1–A (1991) (hereinafter RGDP). Respondent filed an answer on June 23, 1994. On August 2, 1994, the OBA filed an amended complaint alleging an additional seven violations of the ORPC and the RGDP. Not until September 20, 1994, did Respondent file an answer to the amended complaint and only after being ordered to respond to a Motion to Deem Allegations Admitted.

The Professional Responsibility Tribunal (PRT) held a hearing on March 1, 1995. The parties filed a stipulation of findings of facts and conclusions of law. Respondent moved for a continuance so he could provide psychological testimony. The PRT continued the hearing until May 9, 1995, at which time it took testimony. However, on May 9, Respondent failed to provide any psychological testimony.

The PRT adopted the stipulation of the facts and conclusions of law. After considering the facts, Respondent's previous discipline for violating the rules governing attorneys' conduct (a private reprimand and a six-month suspension), the OBA's recommendation that Respondent be disbarred, and Respondent's position that he should receive only probation, the PRT recommended a two year suspension.

## II. FACTS

On August 30, 1991, Respondent received a private reprimand from the Professional Responsibility Commission for negligently handling clients' matters, for failing to communicate with his clients, and for failing to respond to the OBA's grievance investigations. On June 15, 1993, this Court suspended the Respondent from the practice of law.

*State ex rel. Oklahoma Bar Association v. Wolfe,* 864 P.2d 335, 336 (Okla.1993). Because a motion for rehearing was filed, the suspension did not become effective until November 1, 1993. The six-month suspension was based on Respondent's neglect of client matters and failure to respond to the OBA's grievance investigations.

Respondent has stipulated to twenty-four counts of violating the ORPC and the RGDP. Several of the counts occurred after the 1993 suspension and others were being investigated at the time of the suspension.

On thirteen occasions, Respondent failed to timely respond to the OBA requests for information concerning complaints against him. On several of those occasions, Respondent did not file a written response. Rather, his response was solicited during his deposition and only after the OBA subpoenaed him.

Three counts involve his trust account. Three times Respondent's checks on his trust fund were returned for insufficient funds. Respondent admits to having written a check on his trust account to purchase a business asset. One time, Respondent paid out more from his trust account on behalf of a client than he had received. Respondent deposited a $200 check in his trust account which he refunded from his operating account. When the check would not clear, he gave the client cash. Respondent deposited money from a client into his operating account to pay some of the client's expenses. Respondent did not pay the client's bills but paid himself.

On June 15, 1993, Respondent had not filed his income tax returns for 1990 and 1991. At the time the complaint was filed on June 2, 1994, Respondent had not filed his 1992 tax returns. The tax returns were not filed until a week before the hearing.

On seven occasions, Respondent neglected his client's cases. Respondent failed to respond to motions to dismiss and for summary judgment, failed to appear for hearings, failed to prosecute appeals, failed to file judgments, and failed to inform his clients of his suspension. Respondent's neglect resulted in the dismissal of his clients' cases. He either did not tell his client the case was

dismissed or he told them he would refile the matter.

## III. Due Process

### A. Bias of the PRT

■ In Respondent's brief before this Court, he asks that he be granted a new hearing before a new panel. His requests rests on allegations of unfairness and bias. The allegations are not supported by references to the record. Rather, Respondent relies on the fact that the PRT would not continue the first hearing and that it would not allow him to present certain evidence concerning the "Bar and federal court insider causations for the depression and failures."

The complaint was filed on June 2, 1994, and the amended complaint was filed on August 2, 1994. Respondent did not file an answer to the amended complaint until September 20, 1994. Respondent filed an amended answer on March 2, 1995, a day after the first hearing was held. Even though nine months had lapsed since the complaint was filed and seven months since the amended complaint was filed, Respondent's attorney had only one witness, other than himself and the Respondent, present at the hearing and was unable to produce any of his exhibits. That witness was an investigator for the OBA. Respondent's attorney requested a continuance to present psychological testimony. The PRT continued the hearing until May 9, 1995, for the express purpose of allowing psychological testimony. However, Respondent failed to present any such testimony.

After considerable time had been spent by Respondent's attorney on the cause of Respondent's depression, the panel refused further testimony as repetitious. Respondent's attorney was allowed to make an offer of proof but failed to present any additional evidence of the OBA failures which he alleged caused Respondent's depression, or "wounded" state as the Respondent characterizes the problem.

In Respondent's brief he argues his exhibits 1 through 5 reveal evidence of abuses by the Professional Responsibility Commission and federal judges, as well as showing insider corruption at the OBA. The exhibits do not support these allegations. Exhibit 1 is a copy of this Court's opinion in *Tweedy v. Oklahoma Bar Association*, 624 P.2d 1049 (Okla.1981). Exhibits 2, 3, 4, and 5 are documents filed by Craig Tweedy, Respondent's attorney, in a disciplinary matter against Tweedy. Nothing in these documents prove corruption in either the OBA or the federal courts.

Respondent did present the testimony of Steven R. Hickman who testified that the OBA was biased toward large firms and attorneys who practice with those firms. Mr. Tweedy and Respondent also testified that they perceived a bias by the OBA against certain attorneys and that there was insider corruption. None of these witnesses gave any facts which supported their allegations of bias or corruption. A showing of bias requires more than a showing that the trier of fact ruled adversely to you. *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir.1992), *cert. denied*, 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993). Therefore, Respondent's request for a new hearing before a new panel is denied.

### B. Federal Court Suspension

■ Based on this Court's suspension, Judge Ellison suspended Respondent from practicing in the federal courts for the Northern District of Oklahoma on July 15, 1993. This Court's opinion suspending Respondent was issued on June 15, 1993 but, because of rehearing, did not become effective until November 1, 1993. Therefore, the federal court suspension was operative for thirteen months and two days. Respondent argues the extended suspension in federal court violated his due process.

A disciplinary proceeding before this Court is not the proper forum for addressing grievances against the federal bench's decisions. *See* RGDP at rule 1. The Tenth Circuit Rules provide the avenue for complaints against federal judges. Rules of the Judicial Council of the Tenth Circuit Governing Complaints of Judicial Misconduct or Disability, Preface, Rules 1–23 (1994). Further, appeals of suspensions from a district judge in the Northern District are to the remaining active

judges of the district. Local Civil Rules of the United States District Court for the Northern District of Oklahoma, Rule 1.4(E) (1995). The record does not show Respondent took any of the proper steps to appeal the suspension in the federal court.

## IV. Mitigation

### A. Equity

Respondent urges this Court to consider the equities in mitigation of damages. He asserts that the insider corruption within the OBA and within the federal bench helped bring about his wounded state of mind. However, Respondent failed to factually support his allegations of corruption, past or present, within the OBA, the General Counsel's Office, or the federal bench. This "defense" is without merit.

### B. Merger

■ Respondent also argues the doctrine of merger prevents the consideration of discipline for the stipulated violations. Respondent's contention is elusive, but he appears to argue that the OBA was estopped from pursuing the present claims because they were merged with the previous suspension. The present violations could not have been previously presented because some of them had not occurred in time to be prosecuted with this complaint. *See* Stipulated Findings of Facts and Agreed Conclusions of Law ¶¶ 12–25, 28–30, 37–38, 44–45, 55–60, 62–65, 67–72, 74–78, 85–87, 107–08, 114–116, 120–22, 124–126. Respondent unreasonably delayed the investigation of others through his failure to respond to the OBA's requests for information and for documents. *Id.* at ¶¶ 32–35, 40–42, 47–53, 81–83, 90–98, 100–106, 110–11, 118, 123, 127. This Court will not allow attorneys to escape the consequences of their behavior by dilatory actions. Respondent's contrived defense of merger in this case is frivolous.

### C. Lawyers Helping Lawyers

■ Respondent also argues in mitigation that the Assistant General Counsel should have referred him to Lawyers Helping Lawyers and, because of this failure, his discipline should be less. Although many times the OBA refers attorneys to Lawyers Helping Lawyers, it is not the obligation of the OBA to do so. The fact that the OBA did not refer Respondent to Lawyers Helping Lawyers is not a consideration in mitigation of discipline.

Even though Respondent became aware of the services offered by Lawyers Helping Lawyers on March 1, 1995, the only help he had sought at the time of the hearing on May 9, 1995, was supervision if this Court imposed a probation as discipline. He did not seek the help of Lawyers Helping Lawyers as a means of correcting his problems.

## V. Enhancement

Respondent has a history of ignoring responsibilities associated with the privilege of practicing law. He has twice before been disciplined for dilatory conduct in handling client matters and failing to respond to inquiries from the OBA. When Respondent was previously suspended from the practice of law, the Court noted: "Wolfe, even now, does not recognize the seriousness of his misconduct." This apparently has not changed although Respondent argues that he now sees the error of his ways.

Respondent vehemently argues for probation even though the violations of the rules governing attorney conduct presently before this Court are more abundant and at least as serious as when he was suspended. While arguing the cause of the violations was depression from which he has recovered, Respondent continues his dilatory behavior. As recently as the hearings on this complaint, Respondent was acting in an irresponsible manner. He failed to have his exhibits and witnesses available at the first hearing. At the second hearing, he failed to present any psychological testimony which was his stated reason for a continuance. Respondent has continually ignored his responsibilities to respond to OBA inquires.

Additionally, Respondent's brief before this Court is replete with misrepresentations. He states: "The record shows facts and appearances of key appointees to the Professional Responsibility Committee ("PRC") protecting the wrongful acts of select lawyers, clients and others, without awareness

by other PRC members." Although containing serious allegations of "insider corruption", the record does not point to even one instance of protection of select lawyers.

Respondent represents: "No grievance charged post-suspension failures." Counts XIII and XVII both complain of violations occurring after Respondent's suspension. Further, Counts XV, XVI, XVIII, XX, XXI, XXII, and XXIV contain violations occurring after Respondent's suspension. Respondent stipulated to the truth of these allegations before the PRT.

There is little difference in Respondent's previous behavior for which he was suspended and his behavior in the present matter. Respondent still seeks to avoid the consequences of his behavior by placing blame on the PRT, the OBA, and the federal bench for the Northern District of Oklahoma. As in the previous suspension, Respondent has made allegations about the OBA which are unsupported by facts, habitually failed to responded to OBA investigations, and failed to adequately represent his client's. Additionally, in the present matter, he has failed to timely file tax returns and has commingled his operating funds with his clients' trust funds. There is no indication that the previous suspension or any subsequent events have been successful in altering Respondent's dilatory manner.

## VI. Discussion

■ After a de novo review of the record, the Court agrees with the PRT findings that Respondent has violated rules 8.1(b), 1.15, 1.3, 1.4, and 3.1 of the ORPC and rules 5.2, 1.3, and 1.4 of the RGDP. We also find Respondent violated rule 9.1 of the RGDP. The PRT recommends a two-year suspension, the OBA seeks disbarment, and Respondent argues for a probation. It is this Court's obligation to independently determine the proper discipline. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 832 P.2d 814, 817 (Okla.1992).

■ The purpose of discipline is preservation of the integrity of the bar and courts and protection of the public. *State ex rel. Oklahoma Bar Ass'n v. Peveto,* 620 P.2d 392, 395

(Okla.1980). "Part of [this] purpose is deterrence of like behavior by both the respondent and other members of the Bar." *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 824 P.2d 1127, 1129 (Okla.1991). A private reprimand and a six-month suspension have failed to correct Respondent's dilatory behavior.

■ "The attorney-client relationship is one of the highest trust and confidence. This relationship requires that an attorney's dealing with his client must be characterized by the utmost candor and fairness." *State ex rel. Oklahoma Bar Association v. Hatcher,* 452 P.2d 150, 154 (Okla.1969). "[A]cting promptly in pending matters and communicating with a client ... is a *mandatory obligation* imposed upon licensed practitioners." *State ex rel. Oklahoma Bar Ass'n v. Evans,* 880 P.2d 333, 339 (Okla.1994). Not only has Respondent violated this trust by neglecting his client's matters and commingling funds, he has disregarded attempts by the OBA to investigate his failures. Further, he failed to timely file his tax returns and did not do so until the week before the hearing.

The violations in this matter are similar to, but more extensive than, those in *Evans.* The respondent in *Evans* (1) failed to provide his clients with adequate representation, (2) neglected client matters, (3) did not keep his clients informed, and (4) failed to timely respond to OBA inquiries. In imposing a two-year-and-one-day suspension, this Court noted:

A lawyers' license is a certificate of professional fitness to deal with the public as a legal practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. A *lawyer's misconduct* adversely reflects on the entire Bar because it exhibits a lack of commitment to the clients' causes, to the courts, and to other members of the Bar.

*Evans,* 880 P.2d at 339. Respondent has repeatedly shown a lack of commitment to his clients' causes and to the courts.

On *de novo* review, we find Respondent has violated the ORPC and the RGDP. We believe the proper discipline is a suspension from the practice of law for two years and one day. *See* RGDP at rule 11.1. A suspension for longer than two years requires an

applicant for readmission to file a petition with the Supreme Court with affidavits showing the applicant's activities and places of residence since the suspension and that the applicant has not engaged in the practice of law. *Id.* at rule 11.1(a), (d).

Additionally, the applicant must show the Client Security Fund has been reimbursed for all funds expended because of the applicant's behavior. *Id.* at rule 11.1(b). The applicant must pay the expenses of the proceeding for removal of the suspension. *Id.* at rule 11.1(c). The applicant has the burden, by clear and convincing evidence, to show if allowed to practice law, the applicant's conduct will conform to the standards required of members of the Bar. *Id.* at rule 11.4. The PRT must make a finding that the applicant has the competency and learning to practice law. *Id.* at rule 11.5. A member of the Bar who has been suspended from the practice of law has almost as onerous burden for removal of the suspension as someone who has been disbarred does for reinstatement. *See id.* at rules 11.1–11.5.

Because of Respondent's continual failures, the safeguards provided by the reinstatement procedures after a suspension of more than two years are necessary to accomplish the goal of protecting the public. As a condition of reinstatement to the practice of law, Respondent must comply with the requirements of the Rules Governing Disciplinary Proceedings. Within thirty days from the date this opinion becomes final, Respondent shall pay the costs incurred in this proceeding in the amount of $4,163.91.

Respondent, Earl W. Wolfe, is hereby suspended for two years and one day from the practice of law to begin on the day this opinion becomes final. Respondent must timely pay the costs incurred in this proceeding as a condition of reinstatement.

1. *State ex rel. v. Bolton,* 904 P.2d 597, 602 (Okla. 1995); *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 867 P.2d 1279, 1281 (Okla.1994); *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 863 P.2d 1136, 1144–45 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262, 267 (Okla.1982).

2. Rule 11.1, 5 O.S.1991, Ch. 1, App.1–A, Rules of Disciplinary Proceedings, provides in pertinent part:

**RESPONDENT SUSPENDED FOR TWO YEARS AND ONE DAY AND ORDERED TO PAY COSTS.**

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, HARGRAVE and WATT, JJ., concur.

OPALA, J., dissents.

SIMMS and SUMMERS, JJ., not participating.

KAUGER, Vice Chief Justice, with whom WATT, Justice, joins, concurring:

I concur in the majority's decision to suspend the respondent, Earl W. Wolfe (Wolfe/attorney), from the practice of law for a period of two years and one day. The attorney's repeated offenses of the disciplinary rules warrant severe action geared to redress the wrongs committed.

I write separately to dispel the misperception created by the dissent that there is a revolving door policy for attorneys who are suspended from the practice of law for a period in excess of two years. Rather, the statistics demonstrate that this Court has been a rigorous door keeper and that we exercise our responsibility in disciplinary proceedings by inquiring into and gauging the lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than to punish the attorney.[1]

A suspension from the practice of law for a period of two years and one day is tantamount to disbarment in that the suspended attorney must follow the same procedures for readmittance as would a disbarred counterpart.[2] Before an attorney who has been disciplined for more than two years may be

"A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures ..."

readmitted to the practice of law, the lawyer must establish that his/her conduct will conform to the high standards required of a member of the Oklahoma Bar. The applicant must present stronger proof of qualifications than one seeking admission for the first time.[3] In the last ten years, this Court has suspended nine lawyers for two years and one day.[4] Only three of them have been successful in meeting the burden for reinstatement after two-year-and-one-day suspensions.[5] One of the lawyers was barred from practice for three years before being readmitted.[6] One of the attorneys was readmitted to the practice of law after a five-year suspension.[7] One of these practitioners was ultimately disbarred.[8] One of the attorneys has applied for readmission on two separate occasions and this Court has denied both

---

**3.** Rule 11.4, 5 O.S.1991, Ch. 1, App. 1–A, Rules of Disciplinary Proceedings, provides:

> "An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules."

*Matter of Reinstatement of Wright*, 907 P.2d 1060, 1062 (Okla.1995); *Matter of Reinstatement of Moss*, 848 P.2d 564 (Okla.1993).

**4.** *State ex rel. Brierly*, SCBD No. 4072 (Suspended March 26, 1996); *State ex rel. Oklahoma Bar Ass'n v. Busch*, SCBD No. 4068 (Suspended March 12, 1996); *State ex rel. Oklahoma Bar Association v. Adams*, 895 P.2d 701, 706–07 (Okla.1995) [Suspended February 28, 1995, for failure to prosecute cross-petition in action brought against clients, failure to file response for motion for summary judgment, and failure to keep clients informed of status of case by attorney who also had other pending grievances.]; *State ex rel. Oklahoma Bar Ass'n v. Evans*, 880 P.2d 333, 339 (Okla.1994) [Suspended May 3, 1994, for failure to provide client with competent representation, lack of diligence and promptness in representing clients, failing to keep clients informed and failure to comply with rules governing disciplinary proceedings. Authored by the dissenter.]; *Matter of Reinstatement of Smith*, 871 P.2d 426, 428 (Okla.1994) [Suspended March 25, 1986, for federal conviction on seventeen counts involving mail fraud, conspiracy to defraud, willfully making and subscribing to false tax returns and wilful failure to disclose financial interest over foreign bank accounts. Attorney petitioned for reinstatement on February 8, 1994 and on April 13, 1993. Because the attorney could not show clear and convincing evidence that reinstatement was warranted, readmission was denied.]; *State ex rel. Oklahoma Bar Ass'n v. Kessler*, 818 P.2d 463, 467–68 (Okla.1991) [Suspended July 30, 1991, for commingling of client funds, use of client's money for purposes other than those authorized, and misrepresentation to trial court that money had been used for its intended purpose. The attorney was ultimately barred from the practice of law by this Court in *State ex rel. Oklahoma Bar Ass'n v. Kessler*, 895 P.2d 713, 719 (Okla.1995)]; *State ex rel. Oklahoma Bar Ass'n v. Wright*, 792 P.2d 1171–72 (Okla.1990) [Suspended May 8, 1990, because of felony conviction for distributing cocaine. A petition for reinstatement was filed in December, 1992, and reinstatement was granted in *Matter of Reinstatement of Wright*, 907 P.2d 1060, 1067 (Okla.1995). This Court found that the attorney presented overwhelming evidence of rehabilitation and that he would in the future conform to the high standards required of a member of the Oklahoma Bar.]; *State ex rel. Oklahoma Bar Ass'n v. Moss*, SCBD 3536, 3581 [Suspended May 8, 1990, for mishandling client funds—reinstated February 23, 1993, a suspension of almost three years. See, *Matter of Reinstatement of Moss*, 848 P.2d 564 (Okla.1993). Attorney presented stronger proof of his qualifications than is required of someone seeking admission for the first time.]; *State ex rel. Oklahoma Bar Ass'n v. Reeves*, SCBD 3300 [Suspended February 2, 1987].

**5.** *State ex rel. Oklahoma Bar Ass'n v. Wright*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Kessler*, see note 4, supra; *Matter of Reinstatement of Moss*, see note 3, supra.

**6.** *Matter of Reinstatement of Moss*, see note 3, supra.

**7.** The vote on this applicant, Harvey Russell Wright, was five to four—with the dissenter concurring in the majority opinion. See, *State ex rel. Oklahoma Bar Ass'n v. Wright*, note 3, supra.

**8.** *State ex rel. Oklahoma Bar Ass'n v. Kessler*, see note 4, supra.

requests.[9] The statistics demonstrate that sixty-six percent (66%) of the attorneys barred from the practice of law for two years and one day have not returned to the practice of law. The figures do not support the statement in the dissent that:

> "... These persons are first mustered out of the practice and then quickly brought right back into it. Readmission quests that follow suspensions (for a period of two years and one day or longer) have met with an extraordinarily high incidence of success...." (Emphasis in original.)

The hard core numbers associated with two-year-and-one-day suspensions simply do not support the argument that there is a "pattern" of dealing with disciplined attorneys which brings disrepute on the legal profession.

Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[10] In disciplinary matters, this tribunal exercises exclusive original jurisdiction.[11] Our review is *de novo* in considering the record presented as well as recommendations for discipline.[12] The ultimate decision rests with this Court. Neither the findings of fact of the trial panel nor its view of the weight of the evidence or credibility of the witnesses bind us.[13] There is no evidence that the Court has shirked any of its duties either by choosing some discipline less harsh than disbarring a practitioner or by cavalierly readmitting disciplined lawyers to the practice of law.

OPALA, Justice, dissenting from today's sanction of suspension.

When overfocused (which occurs all-too frequently), collegiality-bred concerns for some residue of salvageable characteristics in offending legal practitioners—who, like this respondent, are rightly to be viewed as *deeply scarred*[1] rather than *purely evil*—tend to bring about a management style of discipline enforcement that is best described as a *revolving door* for *de* licensed offenders. These persons are *first* mustered out of the practice and *then* quickly brought right back into it. Readmission quests that follow suspensions have met with an extraordinarily high incidence of success. Our current pattern of addressing lawyer recidivism, which I cannot countenance because it brings disrepute upon the legal profession, should inspire a search for improvement in the exercise of this court's stewardship responsibility.

# I

## CRITICAL FACTS

### A

### THE ANATOMY OF LITIGATION

On June 2, 1994 the Oklahoma Bar Association [OBA or Bar] charged Earl W. Wolfe [Wolfe or respondent] with seventeen counts of misconduct in violation of the Oklahoma

---

**9.** *Matter of Reinstatement of Smith*, see note 4, supra.

**10.** Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1-A, provides in pertinent part:
"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."
*State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 1, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 810 P.2d 826, 830 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 663 P.2d 1228, 1232 (Okla.1983).

**11.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 1, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 10, supra; *State ex rel.*

*Oklahoma Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989).

**12.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 1 at 1284, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 10 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

**13.** *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 904 P.2d 597, 601 (Okla.1995); *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 1 at 1284, supra.

**1.** By "deeply scarred" I mean that these persons have been affected by substance abuse or by destructive psychological forces.

Rules of Professional Conduct [ORPC] [2] and the Rules Governing Disciplinary Proceedings [RGDP]. [3] Respondent answered the complaint on June 23, 1994 and the OBA amended it on August 2, 1994, adding seven more ORPC and RGDP violations. Wolfe answered the amended complaint *only after* the OBA requested the Professional Responsibility Tribunal [PRT] to consider the allegations admitted.

At the March 1, 1995 PRT hearing the lawyers agreed upon the dispositive findings of fact and conclusions of law. Wolfe's defense included allegations that he was *psychologically impaired*. Although respondent had consulted a psychologist before the hearing, that professional was not present to testify nor was a psychological evaluation offered in evidence. The PRT granted Wolfe a continuance to afford him an opportunity to present his evaluation. When the hearing resumed, Wolfe again failed to provide an expert assessment of his psychological infirmities.

The PRT adopted the stipulated facts and conclusions of law. The OBA urged *that Wolfe be disbarred; respondent asked for probation*. The PRT recommended a two-year suspension. This court imposes today a two-year-and-one-day suspension.

## B

## WOLFE'S HISTORY OF ABERRATIONAL CONDUCT IN HIS PRACTICE OF LAW

Wolfe's psychological problems are mirrored in his violations of the standard of professional conduct binding on Oklahoma lawyers. His earlier misconduct resulted in a private reprimand in 1991 and a six-month

suspension from practice in 1993. [4] Today he admits guilt to twenty-four violations of the ORPC and RGDP. He has failed to keep his clients adequately advised, neglected their legal matters and has otherwise shown contempt for the rules governing the practice of law.

Wolfe has admitted failing to (1) respond to dismissal and summary judgment motions, (2) appear for hearings, (3) prosecute appeals, (4) file judgments and (5) inform his clients of his earlier suspension from practice. Three of the current counts against Wolfe involve his trust account. Checks, drawn on his trust account, were returned for insufficient funds. He used one client's money to purchase a business asset. He also made personal use of a client's funds (paid to him in trust to offset abstracting fees and court costs) by depositing them into his firm's operating account. In one instance Wolfe failed to respond to a summary judgment motion. Judgment went to the defendant and Wolfe then appealed. When he failed to prosecute the appeal, the court dismissed the cause as abandoned.

Since 1991 Wolfe has "felt overwhelmed" and unable to manage his practice's growth. He has demonstrated a clear proclivity for not meeting court deadlines and has failed to communicate with his clients on a regular basis. His conduct has also evinced paranoia in dealing with the OBA. He believes the OBA (and two federal judges) mistreated him and are to blame for his "bad attitude." This mindset, he explains, was reflected in his persistent silence when he was called upon to respond to the OBA grievances.

Wolfe [5], his lawyer, [6] and an OBA investigator [7] *all agreed that Wolfe "has a psychological problem."* Wolfe claimed that, among

---

**2.** The OBA's complaint listed violations of Oklahoma Rules of Professional Conduct, 5 O.S.1991 ch. 1, app. 3–A, Rule 1.3, 1.4, 1.15, 3.1, 8.1(b) and 8.4(b) & (c).

**3.** The OBA listed in its complaint violations of Rules Governing Disciplinary Proceedings, 5 O.S.1991 ch. 1, app. 1–A, Rules 1.3, 1.4, 5.2 and 9.1.

**4.** On June 15, 1993 this court suspended Wolfe from the practice of law for six months, from November 1993 to February 1994, for his neglect

of clients' business and failure to respond to the OBA's grievance investigations. *State ex rel. Okl. Bar Ass'n v. Wolfe*, Okl., 864 P.2d 335, 336 (1993).

**5.** *See* PRT hearing transcript, pp. 279–86 and 330–33.

**6.** *See* PRT hearing transcript, pp. 61–70 and 214–15.

**7.** *See* PRT hearing transcript, pp. 101–02.

other things, case overload, which produced great stress, tension, and depression, eventually resulted in his "burnout." The OBA investigator, who had interviewed him numerous times, expressed concern for Wolfe's depression. *During the four years the OBA investigated complaints against Wolfe, he did not file any tax returns and neglected to answer thirteen OBA inquires.* His gross income precipitously dropped from $475,000 in 1990 to $31,000 in 1994.

During the disciplinary process, respondent made no independent effort to contact a psychologist.[8] It was only after his lawyer had made arrangements for an appointment that Wolfe met with one. That meeting preceded his initial hearing before the PRT by one day. Between the two hearings, Wolfe was referred to another psychologist whom he saw on four occasions. When the hearing resumed, *Wolfe did not offer the second doctor's evaluation, but did acknowledge the physician had recommended psychotherapy. Wolfe testified he had not decided if he would accept the recommended treatment.*

## II

### MY APPEAL FOR THE BAR'S REEXAMINATION OF ITS PROCEDURE IN HANDLING LAWYER RECIDIVISM

The current disciplinary system fails to address recidivism problems. It does not look beneath the surface of recidivist lawyers' infractions to assay their underlying behavioral causes. Quite often the lawyer's unprofessional conduct is caused by psychological problems. When confronted by a pattern of seriously aberrant psychological behavior, as that unfolded by this case, the OBA *must require psychological testing for a more profound explanation and understanding of the lawyer's obvious or admitted problems.*

### A

### IF REINSTATED, THIS LAWYER WILL ONCE AGAIN REJOIN THE PROFESSION WITHOUT PASSING THE MUSTER OF A FULL PSYCHOLOGICAL EVALUATION

My concern today is that, without having Wolfe's thorough psychological evaluation as he enters upon his period of disciplinary suspension, neither the OBA nor this court will, when later passing on his readmission quest, be able to make a critical assessment of *progress*, if any, he might have made while professionally inactive. The views of the two concurring justices plainly misperceive my dissent's thrust. My message delivers neither a scathing critique nor a condemnation of the court. Its sole objective is to call for an in-depth reexamination of the process by which recidivist lawyers, who suffer from substance abuse or from psychological disorders, are sanctioned. *Whether inadvertently or otherwise, my appeal for reform is mischaracterized as the voice of a "nattering nabob of negativism."*[9] *In more objective terms, the changes I counsel should cast me in the role of standard-bearer for a badly-needed constructive solution to the vexing problem of professional recidivism brought about by profound psychic or chemically-induced disorders.* Because I do not plead guilty to indicting the court's extant disciplinary jurisprudence, I find no need to comment on the concurrence's excessively and needlessly defensive tone.

Wolfe represents the unique world of disturbed and deeply-scarred people who require legal treatment different from that accorded him today. A pre-sanction evaluation of the lawyer's psychological status should be a *conditio sine qua non.* This lawyer, if ever reinstated, will be returning to his profession without giving the Bar a meaningful compar-

---

8. Wolfe received counseling in 1991 and 1992 when he was executive vice president and general counsel of Heart to Heart Ministries, a Christian counseling service. He talked with one of its counselors and its minister periodically about his personal difficulties.

9. Speech by Spiro T. Agnew, Vice President of the United States of America, in San Diego, Cal. (Sept. 11, 1970).

ative insight into his before-and-after psychological profile.

Much like the Bar, the medical profession is concerned with the ongoing competence of practicing physicians. In response to the felt presence of high levels of stress, depression, and substance abuse (above that present in the general population), state medical boards have taken a proactive approach to dealing with impaired doctors.[10]

The Bar's Lawyers Helping Lawyers Committee [LHL or committee] is a program designed to (a) assist, through direct contact, lawyers impaired by substance abuse, depression, stress and other practice-related malaise and (b) assure the public of competent legal representation. We have taken judicial notice of the committee's existence and praised its contribution as an effective tool for aiding a lawyer's recovery from chemical dependence, stress and depression.[11] In the past, we have ordered offender participation in LHL activities as part of a suspension order.[12] *Although the committee was approached to help Wolfe if he should receive a probationary sentence, he made no personal effort to secure its assistance.*

With no mental evaluation to draw from, I am called upon today to cast a vote by shooting in the dark and guessing that Wolfe would improve or be cured during his suspension. In this posture, I prefer to avoid excessive preoccupation with purely human rescue concerns and err on the side of *public safety by* opting for the respondent's disbar-

ment. The sanction I prefer would prevent him from launching a reinstatement quest for at least five years. Should he seek re-entry, the five-year, minimum post-disbarment period of mandated professional inactivity would be well-nigh essential for tracking and identifying Wolfe's behavioral patterns. Without the aid of a pre-sanction psychological evaluation based on testing that would diagnose the root causes of respondent's problems, the mild discipline chosen by the court is far too risky to satisfy my concerns for public safety.

The universe of case law is ill-suited for demonstrating the system's efficacy to deal with recidivism among the class of lawyers who fall under the rubric of deeply-scarred multiple offenders. Identification of the problem is currently more elusive than the cure. While the OBA does keep an individual lawyer's discipline record, it does not compile statistics on the number of practicing recidivist lawyers, their eventual improvement or the progressive deterioration of their deviant pattern. Currently, no one meaningfully tracks the data that would enable us to pass upon the success or failure of the present-day system of addressing recidivism.

No attempt was made by the OBA to secure a complete psychological evaluation of the respondent *before* the PRT made its recommendation. As the applicable procedure stands today, Wolfe will need no psychological evaluation to reenter the profession. *Our current policy clearly fails to ensure that only unimpaired lawyers are sent back into practice.*

**10.** George M. Bohigian, MD et al., *Substance Abuse and Dependence in Physicians: An Overview of the Effects of Alcohol and Drug Abuse,* 91 Mo. Med. 233 (1994). State medical boards are taking different approaches to solving the problem of substance abuse by physicians. Some boards offer treatment (instead of public disciplinary action) to willing physicians who complete the full program. The Georgia Medical Board developed a booklet identifying and outlining ten "problem" categories, including mental disorder, behaviorally disruptive pattern, substance-related disorder, and cognitive or other problems associated with age. A committee on physician impairment of the Federation of State Medical Boards recommended that when the proposed policy is adopted it should include notice (to the state board) if affected physicians leave treatment against the provider's medical advice. Rebecca Voelka, *Finding Effective Treatment for Impaired Physicians,* 272 JAMA 1238 (1994).

**11.** *State ex rel. Okl. Bar Ass'n v. Donnelly,* Okl., 848 P.2d 543, 545 n. 3 (1992); *State ex rel. Okl. Bar Ass'n v. Carpenter,* Okl., 863 P.2d 1123, 1128 n. 7 (1993).

**12.** *State ex rel. Okl. Bar Ass'n v. Hogue,* Okl., 898 P.2d 153, 155 (1995).

## B

### THE INTEGRITY OF THE OBA'S DISCIPLINARY REGIME REQUIRES THAT (A) A PSYCHOLOGICALLY DISTURBED LAWYER BE EVALUATED BY AN EXPERT BEFORE DISCIPLINE IS ADMINISTERED AND (B) REINSTATEMENT QUESTS BE ACCOMPANIED BY A LIKE EVALUATION, TO BE MADE CONTEMPORANEOUSLY WITH THE APPLICATION FOR READMISSION

I would counsel that for offenders like Wolfe *two* psychological evaluations be required—one in the pre-sanction stage of the process (before the PRT makes its recommendation) and another at the time of reinstatement quest. A comparison of the recidivist lawyer's expert assessments would be invaluable to this court. These evaluations should be mandatory when it becomes apparent that a lawyer's fitness to practice is affected by destructive psychological forces. Some form of such disorder is admittedly present in the respondent. It went undiagnosed and untreated, escaping expert assessment, even though the record demonstrates an undenied pattern of disturbance. The court sanctions Wolfe without any meaningful insight into his *extensive psychological disability*. When a respondent acknowledges the presence of a psychological problem, the PRT should allow adequate time for the lawyer to contact a counseling center suitable for the affliction's treatment and secure LHL's supervision. The disturbed respondent must be willing to admit that a problem exists and that help is needed. It is not the treatment arm's responsibility to make the initial contact; that should be left to the willing respondent. In *State ex rel. Oklahoma Bar Association v. Donnelly*,[13] this court enthusiastically approved the offender's *voluntary* participation in the LHL program as part of the sanction imposed.

The solution I propose (disbarment) would enable the OBA better to assess respondent's rehabilitation progress and fitness before his reentry into practice. Its considered evaluation of the respondent's eligibility for reinstatement would cover an appreciably longer period than that allowed by today's suspension for two years and one day. *My solution is significantly influenced by fear of the unknown.* On this record, no one should even dare *speculate* what Wolfe's present psychological problems may be, much less *predict* the shape they might take when he knocks on the Bar's door for end-of-suspension re-admission.

## III

### SUMMARY

I would not let this lawyer make a disciplinary exit from the Bar without leaving in its files a much-needed trail in the form of a comprehensive professional assessment of his present psychic affliction. Neither would I allow his reinstatement to take place before a comparative study *is made of his condition* between the time of the discipline's administration and the temporal point of his reinstatement quest. Because the Bar *has no policy* for requiring deeply-scarred lawyers, like the respondent, to undergo a meaningful evaluation of their professional disability, I would err on the side of public safety by disbarring Wolfe and putting a distance of a full five-year-long period between his exit and the possibility of reentry.

---

13. *See supra* note 11 and accompanying text.