940 P.2d 493 (1997)
1997 OK 61
STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
Larry D. BARNETT, Respondent.
SCBD No. 4176, OBAD No. 1260.
Supreme Court of Oklahoma.
May 6, 1997.
*495 Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, for Complainant.
Larry D. Barnett, Oklahoma City, Pro Se.
SUMMERS, Vice Chief Justice.
¶ 1 The Oklahoma Bar Association filed a complaint against Larry D. Barrett, alleging several violations of the Oklahoma Rules of Professional Conduct and Rules Governing Disciplinary Procedure. The Professional Responsibility Tribunal found that the Bar had proven by clear and convincing evidence Respondent's violations of the Oklahoma Rules of Professional Conduct, Rules 1.4(a)(failing to keep a client informed), 8.1(b) (filing inadequate responses to the Bar Association and failing to timely respond), and Rule 5.2 of the Rules Governing Disciplinary Procedure. The PRT recommends a private reprimand. The Bar asks for public censure.
¶ 2 This Court has original jurisdiction over all bar matters and will review de novo the findings of the Tribunal. State ex rel. Oklahoma Bar Ass'n v. Wolfe, 919 P.2d 427, 432 (Okla.1996); State ex rel. Oklahoma Bar Ass'n v. Houston, 917 P.2d 469, 470 (Okla.1996). It is this Court's duty to determine independently the proper discipline. Wolfe, at 432.
¶ 3 Carl Levingston retained Larry Barnett to represent him in a wrongful discharge case in Federal Court. Levingston's case had been refused by several attorneys, and Barnett, in a letter, described Levingston's prospects as "tenuous." Barnett nevertheless agreed to represent Levingston, and proceeded in a timely fashion.
¶ 4 As for the fee agreement, Barnett claims that the two entered into a written contract in which the client agreed to pay a $2500.00 retainer fee to be deducted from any contingent fee collected upon recovery. He did not place these funds in a client trust account, because he claims it was a retainer rather than an advancement of costs. Levingston claimed that they agreed to a contingency fee of 30% or 40%. He states that there was no written contract, and that Barnett told him the $2500.00 was to be used for the costs of litigation. Neither testimony can be confirmed, as Barnett testified that he cannot find the file, and has very little documentation of the case. A written contract was never provided to the PRT.
¶ 5 As Barnett had feared, summary judgment was granted for the defendant. Levingston wanted to pursue an appeal, so Barnett filed all the preliminary paperwork. Barnett testified that he did not promise any type of recovery or reversal on appeal. Levingston states that Barnett told him it would be reversed on appeal, and that this reversal would place them in a good settlement position.
¶ 6 The case was dismissed for failure to pursue the appeal. Opposing counsel filed a motion for attorney's fees after the summary judgment, and was granted $3,400.00 to $3,700. Levingston was not notified of these *496 proceedings. Levingston testified that he paid the fees.
¶ 7 The opposing attorney stated that the motion for attorney's fees was unopposed. Barnett testified that the opposing counsel told him that he would not pursue the motion for attorney's fees if the appeal was dropped. Barnett testified that he agreed, and did not oppose the motion. But because Barnett could not locate his case file, he had no supporting documentation to present to the PRT. Opposing counsel stated that he routinely enters these types of agreements, but always documents them. He found no documentation in his case file to confirm Barnett's recollection, and he did not remember making such an agreement in this particular case.
¶ 8 In failing to pursue the appeal, Barnett testified that he thought it was best to let the appeal be dismissed and avoid the attorney's fees. He stated that Levingston told him to do whatever he thought best. Levingston denied making this statement. Levingston's wife stated that she had never heard her husband make such a statement.
¶ 9 It is undisputed that Barnett did not inform his clients that the appeal had been dismissed. They found out from a newspaper article, and immediately attempted to contact Barnett. When he did not return their calls they sent him a certified letter, stating that if they did not hear from him, they would contact the bar association. Barnett failed to respond.
¶ 10 Levingston notified the Bar. When Barnett was notified of the filing of the formal complaint, he filed a written response. The response allegedly contained three pages, but the Bar Association received only two pages. The Bar's investigator sent Barnett a letter, requesting further documentation and an accounting for the $2500.00. Barnett spoke with the investigator by telephone and told him he could not find any documentation, but never responded in writing.
¶ 11 The General Counsel then sent a letter to Barnett, requesting a response to the investigator's earlier requests. Barnett was given additional time in which to respond. He failed to do so and was subpoenaed for a deposition. After his deposition at least three more letters were sent to Barnett requesting that he provide information regarding the Levingston case, and he responded only once. During this period another grievance was filed against Barnett, and the Bar sent two letters requesting that he respond to the allegations. He did not. The second grievance was later dismissed.
¶ 12 The PRT found that the Bar Association had not proven by clear and convincing evidence the violation of Rules of Professional Conduct 1.1, 1.2(a), 1.3, 1.5(c), 1.15(a) and (b), 1.16(d) and 3.2. The PRT found that the Bar had met its burden with regard to Rules 1.4(a), 8.1(b), and Rule 5.2 of the Rules Governing Disciplinary Procedure.
¶ 13 As for Rules 1.1, 1.2(a), 1.3, and 3.2[1], the record does not support a finding of a violation by clear and convincing evidence. It shows that Barnett timely filed the wrongful discharge action, and pursued the claim in a competent manner. The record is conflicting as to whether Levingston insisted that the appeal be pursued at all costs or whether he deferred to his attorney's judgment.
¶ 14 The Bar Association also alleged violation of Rule 1.15(a) and (b) as well as Rule 1.16(c). The Bar asserts that these rules were violated by Barnett's failure to place the $2500.00 in his trust account. Again, there is conflicting evidence as to whether the money was an advance for costs rather than a retainer.
¶ 15 The Bar Association next asserts that Barnett's failure to maintain his file was a violation of these Rules. Rule 1.15(a) and (b) read as follows:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. *497 Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
Rule 1.16(d) states that "upon termination or representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as ... surrendering papers and property to which the client is entitled."
¶ 16 Aside from their application to trust accounts and moneys, these rules have generally been applied to require attorneys to diligently keep papers and property belonging to clients which might have been turned over to the attorney during the course of representation. State ex rel. Okla. Bar Ass'n v. Borders, 777 P.2d 929, 930 (Okla.1989)(attorney violated Rule 1.15(a) by losing an abstract of title entrusted to him by a client). Neither Rule 1.15 nor 1.16 have been applied to work-products of the attorney.
¶ 17 In our case the Bar Association did not allege, nor did Levingston testify, that any papers or property turned over to Barnett by the Levingstons during the course of the representation had been lost or not returned to Levingston. Unlike Borders, there is no assertion that Barnett lost personal documents or property belonging to Levingston. Neither Rule 1.15 nor Rule 1.16 extends to cover this situation. We agree with the PRT.
¶ 18 The PRT found that Barnett had violated Rules 1.4(a) and 8.1(b) of the Rules of Professional Conduct and Rule 5.2 of the Rules Governing Disciplinary Proceedings. Again we agree. Rule 1.4(a) requires an attorney to keep his client informed about the status of the case, and to comply with reasonable requests for information. Barnett did neither. He admitted that he did not return phone calls. He admitted receiving a certified letter from the Levingstons requesting information about the case. He never informed them about his decision to not pursue the appeal or that the appeal had been dismissed, even after their repeated inquiries. See State ex rel. Okla. Bar Ass'n v. Adams, 895 P.2d 701 (Okla.1995)(failure to keep clients informed of the status of their case is a violation of rule of professional conduct); State ex rel. Okla. Bar Ass'n v. Briery, 914 P.2d 1046 (Okla.1996)(failing to notify client of the status of case warranted discipline).
¶ 19 Rule 5.2 of the Rules Governing Disciplinary Proceedings requires that in a Bar proceeding an attorney answer "within twenty days, or such further time as maybe granted." Failure to do so can subject the attorney to discipline. Rule 8.1(b) states that an attorney shall not "knowingly fail to respond to a lawful demand for information...." On several occasions Barnett did not respond in writing as requested by the General Counsel. On two occasions he telephoned the investigator or the general counsel. However, he never responded with full information. On at least two occasions he did not respond at all. We agree with the PRT that this conduct warrants discipline. See State ex rel. Okla. Bar Ass'n v. Wolfe, 919 P.2d 427 (Okla.1996); State ex rel. Okla. Bar Ass'n v. Glass, 832 P.2d 831 (1992)(failure to timely file a written response warrants discipline).
¶ 20 The PRT found that the Bar Association had not shown by clear and convincing evidence a violation of Rule 1.5(c). We disagree. Rule 1.5(c) states:
(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a *498 contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, whether the client is to be liable for reimbursement of litigation and other expenses to e deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery showing the remittance to the client and the method of determination. (emphasis added)
Barnett and Levingston agree that Barnett was to be paid a contingent fee. Barnett claims that the agreement was in writing; Levingston and his wife both testified that it was not. Barnett did not produce a written agreement, however, claiming that he had lost his file.
¶ 21 It is this exact situation that Rule 1.5(c) was intended to prevent. Rule 1.5(c) requires that the written contingent fee contract state how costs are to be borne. Here the dispute between Barnett and Levingston is whether the money advanced was for fee or costs. A written contract in compliance with the Rule would have clarified that. The Rule also requires that the attorney provide a written statement at the conclusion of the matter to show the client the outcome of the matter. There is no dispute that this was never done. Barnett never informed the client, either orally or in writing, at the conclusion of the matter. This is sufficient to show by clear and convincing evidence that Barnett violated Rule 1.5(c).
¶ 22 Respondent Larry D. Barnett violated Rules 1.4(a), 1.5(c), and 8.1(b) of the Oklahoma Rules of Professional Conduct and Rule 5.2 of the Rules Governing Disciplinary Proceedings. The PRT recommended a private reprimand, noting that he had not been previously disciplined. We find instead that Barnett's conduct warrants a public reprimand, and it is so ordered. The Bar Association has filed an application to assess costs in the amount of $1517.08. Respondent is ordered to pay the costs of the proceedings in that amount within 60 days.
¶ 23 KAUGER, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and ALMA WILSON, JJ., concur.
¶ 24 OPALA, Justice, concurring in part and dissenting in part.
"I would suspend Respondent's license to practice for not less than 60 days."
¶ 25 WATT, Justice, concurring in part and dissenting in part.
"I would follow the recommendation of the Professional Responsibility Tribunal and impose a private reprimand in this case."
NOTES
[1] Rule 1.1 requires a lawyer to provide competent representation. Rule 1.2(a) states that a lawyer shall abide by his client's decisions concerning the objectives of representation, subject to specific exceptions. Rule 1.3 states that a "lawyer shall act with reasonable diligence and promptness in representing a client." Rule 3.2 states that an attorney "shall make reasonable efforts to expedite litigation consistent with the interests of the client."