STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Layton M. PERRY, Jr., Respondent. (Two Cases).

S.C.B.D. Nos. 4164, 4201.

Supreme Court of Oklahoma.

March 11, 1997.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant,

Layton M. Perry, Jr., Oklahoma City, pro se.

WATT, Justice:

## PROCEDURAL HISTORY

In two separate proceedings, the Oklahoma Bar Association filed complaints against respondent, Layton M. Perry, Jr., alleging numerous counts of professional misconduct. The complaint in SCBD No. 4164, filed on March 26, 1996, alleged four counts of misconduct. The complaint in SCBD No. 4201, filed on August 30, 1996, alleged three counts of misconduct. Respondent failed to file an answer to either complaint. In both cases the OBA moved to deem the allegations of the complaints admitted. Pursuant to Rule 6.4 of the *Rules Governing Disciplinary Proceedings* ("RGDP"), 5 O.S.1991, Ch. 1, App. 1–A, the trial panel in SCBD No. 4164 deemed the allegations admitted.[1] The panel then conducted a hearing for the purpose of determining the discipline to be imposed. *Id.* In SCBD No. 4201, the trial panel ordered respondent to file an answer out of time. He complied and a hearing was thereafter held. Respondent appeared *pro se* at both hearings.

The panel in SCBD No. 4164 recommended that respondent be suspended from the practice of law for a period of two years and one day. The panel in SCBD No. 4201 recommended a suspension of six months. Both panels also recommended that respondent be surcharged the costs of the proceed-

ings. We have consolidated the two cases for review.

■ In bar disciplinary proceedings, this Court exercises exclusive original jurisdiction as a licensing court. *State ex rel. Oklahoma Bar Ass'n. v. Gasaway,* 810 P.2d 826, 830 (Okla.1991). Although the trial panels' recommendations are afforded great weight, the ultimate responsibility for deciding whether misconduct has occurred and what discipline is appropriate rests with this Court. *Id.* "Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence." *Id.,* citing RGDP Rule 6.12 and *State ex rel. Oklahoma Bar Ass'n v. Braswell,* 663 P.2d 1228, 1232 (Okla.1983). Upon *de novo* review of the two records, we find respondent violated numerous rules of professional conduct and rules governing disciplinary proceedings. The facts in support of each count alleged in the OBA's two complaints, as well as an analysis of each rule violation, is set forth below.

## SCBD NO. 4164
## FACTS AND RULE VIOLATIONS

COUNT I

Crystal Springs, Inc., was an Oklahoma corporation whose officers were John Huber, president, Virginia Thompson, vice-president, and Janna Meyer, secretary-treasurer. The corporation's shares were owned as follows: 40% by Huber, 10% by Thompson, 40% by Meyer and 10% by the ALKO Trust, a Louisiana trust. Beginning in about July of 1992 and continuing through early 1994, respondent performed various legal and accounting services for Crystal Springs.

Crystal Springs borrowed $200,000.00 from ALKO Trust, as evidenced by a note dated April 1, 1992, and an additional $35,000.00 from Freedom Exploration Company, Inc., a Louisiana corporation, as evidenced by a note dated November 24, 1992. Huber and Meyer signed separate guarantees to Freedom Exploration in the amount of $17,500.00 each.

---

1. Rule 6.4 mandates that a respondent file an answer with the Chief Justice of this Court within twenty (20) days after a complaint has been mailed. "In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed." *Id.*

Meyer and her husband, Earl, arranged the financing of both loans which Huber believed to be from independent sources. From December 1993 through February 1994, respondent personally loaned the corporation $43,-500.00. Huber testified that he had not been consulted regarding, nor had he consented to, the loans from respondent.[2] Discovery of the unauthorized loans and of numerous unauthorized expenditures led to a dispute between officers and members of the Board of Directors of Crystal Springs.[3] Respondent aligned himself in the dispute with the Meyers against Huber and Thompson.[4]

In the course of his representation of Crystal Springs, respondent failed to disclose to the officers or to the Board of Directors that he had become the president of Freedom Exploration, that he was the trustee for the ALKO Trust, that Janna Meyer was the beneficiary of the ALKO Trust, that he represented Janna Meyer in that capacity, and that he was the attorney for the Meyers.

On February 10, 1994, respondent, as president of Freedom Exploration, assigned the Crystal Springs Note and Guaranty Agreement from Freedom Exploration to the ALKO Trust. On February 15, 1994, respondent identified himself as trustee of the Trust and demanded repayment of the $235,-000.00 from Huber. On February 28, 1994, respondent filed an action in district court on behalf of the Trust seeking repayment of the loans made to Crystal Springs by the Trust and Freedom Exploration. Neither Huber nor the corporation consented to respondent filing the action. It was not until the action was filed that Huber learned the respondent was president of Freedom Exploration, trustee of ALKO Trust or that he represented interests adverse to those of Crystal Springs.

The case was settled upon the payment of $27,941.55 from Janna Meyer to Huber and Thompson in exchange for their stock. Respondent loaned Meyer all of the settlement funds to facilitate the transaction.[5] Shortly thereafter, respondent was named vice-president of Crystal Springs and was elected to its Board of Directors. We find by clear and convincing evidence that respondent's actions constituted violations of Rule 1.8(a) & (e), Rule 1.13(d) & (e), Rule 2.2, and Rule 1.7(a) & (b) of the *Oklahoma Rules of Professional Conduct* ("ORPC"), 5 O.S.1991, Ch. 1, App. 3-A.

Rule 1.8(a) states:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

When respondent loaned money to Crystal Springs, he entered into a business transaction with the corporation. Whether the terms of the transaction were fair and reasonable to the corporation is not known, because respondent did not disclose them to his client, Crystal Springs. Furthermore, Crystal Springs was not given an opportunity to seek the advice of independent counsel regarding the loans and did not give its consent to the transactions in writing.

Rule 1.8(e) provides in relevant part:

---

**2.** Although Virginia Thompson joined Huber in the grievance filed against respondent, she did not testify at respondent's hearing, held on May 17, 1996. Ms. Thompson was killed in the explosion of the Alfred P. Murrah Federal Building on April 19, 1995.

**3.** Among other things, Huber discovered several canceled checks made payable to respondent for legal services rendered. Huber testified that he did not know what legal services were represent-

ed by the checks and that neither he nor the Board of Directors had authorized the payments.

**4.** Earl Meyer had secured ALKO Trust's 10% interest by proxy.

**5.** The buyout was accomplished via three cashier's checks, all purchased by respondent. At the top of each check, the words "Loan Proceeds" had been covered by "white-out."

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that a lawyer may advance court costs and expenses of litigation. . . .

Respondent violated this rule by loaning settlement proceeds to Janna Meyer. Her buyout of Huber and Thompson put an end to their then-pending litigation.

Rule 1.13(d) states:

In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

■ It is readily apparent that the constituent of Crystal Springs with whom respondent was dealing was Janna Meyer. The Board of Directors was deadlocked in a struggle for control of the company. Meyer's interest in demanding repayment on the two notes was clearly adverse to the interests of Crystal Springs and, it appears, was intended to wrest control of the company from Huber and Thompson. As Crystal Springs' attorney, respondent had a professional obligation to inform either Huber, as president, or the Board of Directors of Meyer's interest in ALKO Trust, his position at Freedom Exploration and their plan to call the notes. Not only did respondent fail in this respect, he actively participated in the scheme.

Rule 1.13(e) provides:

A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Subject to the provisions of Rule 1.7, this rule would have permitted respondent to represent Janna Meyer in her individual capacity. However, for the reasons discussed below, respondent's actions were in blatant violation of Rule 1.7. Respondent claims that Earl Meyer actually ran Crystal Springs and that permission for the dual representation came from the Meyers. We first note that Earl Meyer was neither an officer nor director of the company.[6] Moreover, Rule 1.13(e) requires that consent be given by an appropriate official *other than the person who is to be represented.* Respondent did not receive such consent from either Huber or Thompson, the only officials from whom consent would conceivably have been appropriate.

The same inaction that gave rise to a violation of Rule 1.13(e) also resulted in respondent violating Rule 2.2. Rule 2.2 generally requires that an attorney who seeks to act as an intermediary between clients must consult with, and obtain consent from, each client concerning the dual representation. The rule further provides that common representation is permitted only where it "can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients." Respondent did not consult with, or obtain consent from, Crystal Springs regarding his representation of Janna Meyer or the ALKO Trust. Under the circumstances, his representation of Meyer and the trust plainly could not have been, and in fact was not, undertaken impartially and without improper effect on his responsibilities to Crystal Springs.

Although not charged by the OBA, we also find that respondent's conduct constituted a classic violation of ORPC Rule 1.7. As a preliminary matter, we note that the Bar's failure to specifically charge a violation of this rule is irrelevant. "The Bar need only plead sufficient facts that will put the accused attorney on notice of the charges and give him an opportunity to respond to the facts alleged." *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 863 P.2d 1136, 1143 (Okla. 1993). RGDP Rule 6.2, which governs the contents of disciplinary complaints, requires only "that the specific facts be set forth, and does not require the lawyer to be notified of

---

**6.** Earl Meyer was originally the vice-president of Crystal Springs. However, according to Huber, the company asked Meyer to resign his position because he was a convicted felon.

the specific disciplinary rule that such conduct violates." *State ex rel. Oklahoma Bar Ass'n v. Moss*, 794 P.2d 403, 407 (Okla.1990). The complaint at issue contained sufficient facts to apprize respondent of the charges leveled against him.

Rule 1.7(a) provides:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

■ Pursuant to this rule, respondent was prohibited from undertaking representation of either Meyer or ALKO Trust. The interests of the trust and of Meyer—as beneficiary of the trust—in demanding repayment of the loans were directly adverse to the interests of Crystal Springs in maintaining the company as a viable concern. Meyer also had the added incentive of trying to oust Huber and Thompson in her apparent quest to gain control of the corporation. Respondent could not reasonably have believed that his representation of the trust and of Meyer would not adversely affect his relationship with the corporation. Respondent's behind-the-scenes maneuvering and his representation of the trust (and, consequently, Meyer) in its suit against Crystal Springs was a flagrant violation of Rule 1.7(a).

In pertinent part, Rule 1.7(b) states:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. . . .

■ Under this rule, respondent should have, at the very least, terminated his relationship as counselor for Crystal Springs before he got involved with Freedom Exploration, ALKO Trust, and the Meyer's plans to take over the company. His representation of Crystal Springs was clearly limited by his responsibilities to the Meyers and to the Trust, and by his positions as president of Freedom Exploration and as trustee of the Trust. As previously stated, respondent did not seek or obtain the consent of Crystal Springs before undertaking these multiple representations. We find respondent's actions to be a gross violation of this rule as well.[7]

## COUNT II

Respondent was retained in November of 1989 to represent several landowners in an action to recover underpaid royalties from oil companies that had purchased oil from wells owned by the landowners. After repeated unsuccessful attempts to determine the status of their case–and after being assured that a lawsuit had indeed been filed–several of the landowners confronted respondent, apparently in early 1991. Respondent's initial reply to his clients was that he had filed the case in Dallas, Texas. He subsequently admitted that he had not filed their suit anywhere. Court records show that respondent filed an action on behalf of the landowners in the District Court of Grady County on February 28, 1991. However, he continually failed to keep his clients reasonably informed as to the status of the case and he failed to

7. The OBA also charged respondent with violating Rule 1.8(b) & (j). Rule 1.8(b) states in relevant part that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation. . . ." Although it is possible respondent used information about Crystal Springs to its disadvantage during his other representations, the record does not contain clear and convincing proof of such. Rule 1.8(j) states that, with the exception of attorney fee liens or contingent fee contracts, "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client. . . ." Again, it is possible respondent also violated this rule. However, the OBA did not prove that respondent had any proprietary interest in either ALKO Trust or Freedom Exploration, and there is no indication that the funds he gave to Crystal Springs were anything but loans.

promptly comply with his clients' requests for information about the case. During the course of litigation, respondent advised his clients that the defendant oil companies admitted they owed the landowners the excess royalties and interest being sought in the lawsuit.[8] The record reflects that the defendants never made any such statements.

Respondent engaged in limited discovery in the Grady County lawsuit by filing interrogatories and requests for production of documents. However, when the defendants' responses to those filings allegedly failed to divulge any meaningful information, respondent neglected to file a motion to compel. Respondent failed to appear for a scheduled pretrial conference. He also failed to pursue any additional discovery or to submit an exhibit or witness list as directed in the district court's scheduling order.

Based on respondent's failure to prosecute or to comply with the scheduling order, the defendants filed motions to dismiss the action. Without consulting with or advising his clients, respondent notified the court that he would appear at the scheduled hearing and seek dismissal of the case on behalf of the landowners. However, respondent failed to appear in court as scheduled and he failed to present the dismissal motion or any other response to the ·motions to dismiss. Consequently, the district court entered an order dismissing the lawsuit. We find respondent's actions violated ORPC Rules 1.1, 1.3, 1.4(a), 3.2 and 8.4(c).

We first address respondent's failure to diligently prosecute his client's lawsuit. Rule 1.1 mandates that "[a] lawyer shall provide competent representation to a client," which includes "thoroughness, and preparation reasonably necessary for the representation." Rule 1.3 requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Rule 3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

Respondent did not file his clients' lawsuit for some 14 months after being retained.

After doing so, he did little to prosecute it. Court records indicate that the proceedings experienced several periods of inactivity, including one extending from October of 1991 through April of 1993. At that point the district court, not respondent, initiated activity with the entry of an order for disposition docket. Respondent failed to appear for a scheduled conference and a hearing, he failed to follow the trial court's scheduling order and he failed to respond to the defendants' motions to dismiss. As a result, the landowners' suit was dismissed. In sum, respondent failed to provide his clients with competent representation and he failed to diligently expedite their litigation.

We now examine respondent's communications with his clients. Rule 1.4(a) requires that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." At his disciplinary hearing, respondent admitted he violated this rule by failing to properly correspond with his clients. However, respondent claims in his brief to this Court that he communicated on a monthly basis with one of his clients who, in turn, was supposed to relay information to the other landowners. Under Rule 1.4(a), respondent had an ethical obligation to keep *all* of his clients informed about the status of their suit. Equally as important, respondent was also required to promptly reply to each of his clients' reasonable requests for information. Several of the landowners complained that respondent was difficult to reach or that he promised, but failed, to send them updated information. One client testified that respondent "got where he didn't communicate" and that he stopped returning phone calls in late 1990.

In *State ex rel. Oklahoma Bar Ass'n v. Evans*, 880 P.2d 333, 338–9 (Okla.1994), we held:

> Professional competence–i.e., acting promptly in pending matters and communicating with a client–is a *mandatory obligation* imposed upon licensed practition-

---

**8.** In a status letter to his clients dated July 15, 1991, respondent wrote, "Let me again state that all of the companies admit that they owe you the excess royalties as well as the interest which is accruing at the rate of 12 percent."

ers. Albeit onerous, this obligation is the *very minimum* to be expected from a lawyer. It epitomizes professionalism. Anything less is a breach of a lawyer's duty to serve the client.

(Emphasis in original, footnote omitted). The facts of this case amply demonstrate that respondent breached his duty to serve his clients.

As troubling as any allegation is the charge that respondent lied to his clients. Rule 8.4(c) states, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation...." Respondent lied to his clients about having filed their lawsuit and he lied when he informed them that the defendants conceded they owed the clients money. "Every licensed lawyer is presented to the public as a person worthy of the trust of the public as to his professional integrity and expertise." *State ex rel. Oklahoma Bar Ass'n v. Samara,* 683 P.2d 979, 983 (Okla. 1984). "The relationship between a lawyer and a client calls for the highest degree of integrity and fidelity." *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262, 267 (Okla.1982). Respondent's willful misrepresentations to his clients is reprehensible and constitutes serious professional misconduct.

## COUNT III

When interviewed by the OBA's investigator on November 1, 1993, respondent denied that he had ever informed his clients in the Grady County action that the defendants had agreed they owed his clients excess royalties and interest. He also denied telling his clients that he had filed an action on their behalf in Dallas, Texas. Both falsehoods were proved by clear and convincing evidence. *See* Count II, *supra.* Misrepresenting those facts to the OBA's investigator constitutes grounds for discipline under ORPC Rules 8.1(a) and 8.4(c). The substance of Rule 8.4(c) was set forth above. Rule 8.1(a) provides that a lawyer in connection with a disciplinary matter shall not

"knowingly make a false statement of material fact." [9]

## COUNT IV

On August 24, 1994, the OBA mailed respondent a letter notifying him of the grievance arising out of the Grady County lawsuit and advising him of the necessity to file a written response within twenty days. Respondent failed to respond to the grievance within twenty days as provided by RGDP Rule 5.2. On October 11, 1994, the OBA sent respondent a certified letter directing him to contact the office of the General Counsel within five days. The certified mail receipt indicated respondent received the letter on October 12, 1994. Respondent did not contact the General Counsel's office and wholly failed to file a written response to the grievance.

Rule 5.2 mandates that a lawyer who has been served a copy of a grievance by the General Counsel:

[S]hall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds.... The failure of a lawyer to answer within twenty (20) days after service of the grievance ..., or such further time as may be granted by the General Counsel, shall be grounds for discipline....

ORPC Rule 8.1(b) states in pertinent part that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information from [a] ... disciplinary authority...." Respondent's failure to respond to the grievance clearly violated these rules.

At his disciplinary hearing, respondent attributed his failure to respond to the grievance by stating that he had received some bad legal advice regarding how he should respond. Respondent claimed he was told by counsel that he could just orally present his

---

9. The OBA also alleged that respondent's oral misrepresentations to its investigator constituted a violation of RGDP Rule 5.2. We hold that they did not. Rule 5.2 states that deliberate misrepresentation in a lawyer's *written response* to a grievance shall itself be grounds for discipline. As respondent failed to file any written response to the OBA's grievance, *see* Count IV *infra.,* he could not have violated that particular provision of Rule 5.2.

side of the case at the hearing. In later filings to this Court, respondent asserts that his actions did not violate Rule 5.2 because he "made himself available each time that the Bar's attorney or investigator had a question." We take this opportunity to reject respondent's arguments.

Both letters mailed to respondent from the General Counsel's office explained, quoting directly from Rule 5.2, that respondent had twenty days within which to file a response to the OBA's grievance. Moreover, Rule 5.2 clearly states (1) that the failure of an attorney to answer a grievance within twenty days after service "shall" be grounds for discipline and (2) that the response "shall" be in writing. The word "shall" is mandatory. The language of Rule 5.2 leaves no room for interpretation regarding the proper form or time for filing a response. Respondent's proffered excuses for failing to respond to the OBA's grievance—in writing or otherwise—are meritless.

## SCBD NO. 4201
## FACTS AND RULE VIOLATIONS

### COUNTS I & II

On December 27, 1995, respondent tendered a check in the amount of $125.00, drawn on his Client Trust Account, to the OBA for his registration fee for a continuing legal education seminar. The check was twice returned to the OBA from respondent's bank due to insufficient funds in the account. *The check remains unpaid to this day.* Additionally, several other checks drawn on respondent's Client Trust Account were returned to various payees due to insufficient funds.

During the investigation spawned by respondent's bad check, the OBA discovered the following additional facts. All funds deposited into respondent's Client Trust Fund from about late 1994 through late 1996 did not have any characteristics of trust funds or client funds, but were respondent's earned fees. During that time span, respondent used the trust fund as a general checking account for both personal and business expenses. Prior to that time, respondent admitted, he occasionally used his trust account

to briefly hold client funds while also using the account as a repository for earned fees.

After suffering a financial setback and being subjected to various collection activities, respondent filed for personal bankruptcy on April 11, 1996. However, he never disclosed to either his creditors or to the bankruptcy court the existence of the trust account or of the personal nature of the account funds. Respondent also made several other misstatements/omissions in his bankruptcy petition: He failed to disclose the existence of a bank account closed within the preceding year, he failed to disclose the existence of at least two additional creditors and he swore that he had not been an officer, director or managing executive of a corporation or partnership within the previous two years. As previously stated, it was during that two year period that respondent was named president of Freedom Exploration, trustee of the ALKO Trust, and vice-president and director of Crystal Springs. We find such conduct violated ORPC Rules 1.15 and 8.4(c) and RGDP Rule 1.3.

Rule 8.4(c), which relates to conduct involving dishonesty and the like, was set forth above. Rule 1.15 concerns the proper use of client trust accounts. In *State ex rel. Oklahoma Bar Ass'n v. Briery*, 914 P.2d 1046 (Okla.1996), this Court suspended an attorney for two years and one day for, among other things, misusing his client trust account. The OBA and the respondent attorney stipulated that the following facts constituted a violation of Rules 1.15 and 8.4(c):

> Respondent misused his attorney trust account by: a) writing checks out of the account for personal bills, expenses and routine purchases; b) writing checks for personal expenses when there were insufficient funds in the account to cover the checks; c) commingling his own funds with client trust funds ...; and d) routinely depositing funds into the account that did not have any characteristics of trust funds or client funds.

*Id.* at 1048. In the present case, respondent misused his Client Trust Account in much

the same way as did the attorney in *Briery*.[10] We similarly find that such conduct violates Rules 1.15 and 8.4(c).

We also find that respondent violated Rule 8.4(c) by issuing "insufficient funds" checks to the OBA and others.

"[The] issuance of such checks manifests an abiding disregard of 'the fundamental rule of ethics–that of common honesty–without which the profession is worse than valueless in the place it holds in the administration of justice.'" (citations omitted)

*State ex rel. Oklahoma Bar Ass'n v. Smith*, 615 P.2d 1014, 1018 (Okla.1980), quoting *Hamilton v. State Bar of California*, 23 Cal.3d 868, 153 Cal.Rptr. 602, 591 P.2d 1254, 1257 (1979).

Lastly, we find respondent's actions in secreting personal funds in his trust account constituted a violation of ORPC Rules 8.4(c) & (d) and RGDP Rule 1.3. By failing to disclose the existence of such funds to his creditors and the bankruptcy court, respondent "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation" in violation of Rule 8.4(c). We also find *sua sponte* that such conduct, combined with respondent's failure to disclose other relevant information to the bankruptcy court, violated Rule 8.4(d)'s dictate that no lawyer "engage in conduct that is prejudicial to the administration of justice." These same actions also "bring discredit upon the legal profession" in violation of Rule 1.3.

## COUNT III

As was the case in SCBD No. 4164, respondent ignored two separate letters sent by the OBA informing him that a grievance had been filed against him and of the necessity to file a written response within twenty days. Respondent conceded that he received both letters and that he took no action to address them. For the same reasons set forth in Count IV of SCBD No. 4164, *supra.*, we conclude that such inaction clearly violated RGDP Rule 5.2 and ORPC Rule 8.1(b).

## DISCIPLINE

■ This Court has on numerous occasions emphasized that the principle purpose of disciplinary proceedings is not punishment of the involved attorney, but preservation of public confidence in the legal profession and in the judiciary that licenses them. *State ex rel. Oklahoma Bar Ass'n v. English*, 853 P.2d 173, 176 (Okla.1993); *Raskin*, 642 P.2d at 267. In these cases respondent created and participated in a flagrant conflict of interest. He represented opposing sides in a controversy without the knowledge or consent of one party. He represented a client's two major creditors to the client's detriment. He also actively aided one client in the hostile takeover of another by facilitating and then representing one party in a lawsuit, and then by personally funding the settlement. In another matter, respondent lied to his clients, he failed to diligently represent their interests or expedite their litigation, he failed to keep them reasonably informed as to the status of their suit and he failed to promptly reply to their inquiries. Respondent passed several bad checks, misused his Client Trust Account, secreted personal assets from creditors and the bankruptcy court, and failed to divulge other pertinent information in his bankruptcy filings. In one case respondent lied to the OBA's investigator. In both cases he failed to respond to the OBA's grievances. In sum, respondent has brought discredit upon his profession and has eroded public confidence in the Bar.

In *State ex rel. Oklahoma Bar Ass'n v. McCoy*, 912 P.2d 856 (Okla.1996), this Court disbarred an attorney who failed to provide competent representation, failed to keep his clients reasonably informed, failed to act with reasonable diligence and promptness, failed to make reasonable efforts to expedite litigation, failed to make written responses to the OBA's grievances and failed to attend his disciplinary hearing. Although respondent in the present case attended his disciplinary hearings, he also committed acts that constituted a gross conflict of interest, he misused his Client Trust Account, he secreted personal assets from creditors and he failed to

---

**10.** Unlike the attorney in *Briery*, there is no alle-

gation here that respondent converted any of his

divulge relevant information in his bankruptcy proceeding. Upon thorough consideration of these facts, we conclude that disbarment is the appropriate discipline. Accordingly, respondent Layton M. Perry, Jr., is ordered disbarred and his name stricken from the roll of attorneys.

The OBA has filed separate applications to assess the costs of these proceedings in which they identify costs of $1,105.62 in SCBD No. 4164 and $1,234.22 in SCBD No. 4201. Neither application includes the $125.00 respondent owes the OBA for his dishonored check. Respondent is further ordered to pay the costs of these proceedings in the amount of $2,339.84 within thirty days of the date this opinion becomes final.

RESPONDENT DISBARRED AND ORDERED TO PAY COSTS.

SUMMERS, V.C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA and ALMA WILSON, JJ., concur.

KAUGER, C.J., concurs in result.

HODGES, J., concurs in part, dissents in part.

clients' money to his own use and benefit.