STATE of Oklahoma, ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

**Harry C. EVANS, Respondent.**

**Nos. SCBD 3336, OBAD 734.**

Supreme Court of Oklahoma.

Nov. 3, 1987.

Rehearing Denied Dec. 22, 1987.

Dorothy J. Lindsey, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Fenton R. Ramey, Ramey, Biehler & Miller, Yukon, for respondent.

HARGRAVE, Vice Chief Justice.

The Oklahoma Bar Association instituted this disciplinary proceeding against the respondent after receiving a written complaint under the Rules Governing Disciplinary Proceedings, 5 O.S.1981 Ch. 1, App. 1–A, Rule 6. The complaint alleged two counts, being violations of the Code of Professional Responsibility, DR 9–101(C) and DR 1–102(A)(4).

After a hearing before the Trial Panel, as provided for in the rules, the Panel issued a report and made a recommendation that the respondent be suspended from the practice of law for four years. Pursuant to Rule 6.15 of 5 O.S. Ch. 1, App. 1A, this Court has conducted an independent review of the evidence submitted to the Trial Panel. This Court finds the evidence clearly establishes that the respondent, Harry C. Evans, violated Canon 9, DR 9–101(C), providing as it does: "A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."

This violation of DR 9–101(C) occurred during respondent's representation of a client in a criminal matter. The client, Mr. Barton, protesting his innocence, was desirous of preventing lewd molestation charges being formally filed against him. The respondent attorney asked the client at one point if he would be amenable to making a

"campaign contribution" to certain public officials if that was necessary to prevent filing of the charges. The client taped the conversation. Respondent admits the impropriety of this action here, stating only that his sole intent was to test the client's vehement assertion of innocence. Respondent never received money in furtherance of this conversation nor actually solicited any for the purpose. As far as the record shows this subject was discussed only once. The District Attorney's office and the Oklahoma State Bureau of Investigation studied the matter and concluded criminal charges were not warranted. No approach was made to a public official in furtherance of the subject of the conversation.

After being represented by respondent for about eight months the client hired another attorney. Under the direction of that attorney a complaint was filed with the Bar Association citing the impropriety outlined above and a claim that the fees charged were excessive.

The respondent was notified of the complaint pursuant to Rule 5.2 which requires the attorney to make "a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct ...". In his response respondent stated no bribes, offers or anything were made to any officer, witnesses or officials and none were discussed. However, when his deposition was taken, Mr. Evans freely admitted that the taped conversation did take place. He explained that the response to the grievance notification was a denial only that a public official had actually been approached in an attempt to influence the outcome of the possible criminal charges. The respondent asserted he did not understand the notification of grievance referred to the fact that such improper activities were discussed between him and his client. The failure to make a full and fair disclosure was found to be a violation of DR 1–102(A)(4) by the Trial Panel.

At this juncture there is no dispute that the respondent did have an improper exchange with his client concerning improper influence upon a public official in perform-ance of his duties. In that conversation the respondent attorney clearly violated the tenets of Canon Nine, specifically, DR 9–101(C). The trial tribunal was fully justified in finding a violation of DR 1–102(A)(4) arose from the attorney's response to the grievance. It is not sufficient for the respondent to read the grievance only to allege that bribery of a public official was actually attempted. To so read the grievance is to artificially parse it not in keeping with Rule 5.2. The addition of the observation by the respondent that such allegation must have been a figment of the grievant's imagination forcloses any meaningful attempt to square the response with Rule 5.2's requirement that the attorney subject to investigation should make a "full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct ..." Under Rule 5.2 misrepresentation of a deliberate nature in the response is in itself grounds for discipline.

The Bar Association concedes there was no criminal wrongdoing encompassed within the respondent's conversation with his client that is the basis of the complaint. Conversely, respondent does not contest the Trial Panel's conclusion that such conduct is a violation of the letter and spirit of the disciplinary rules. Respondent requests that the recommended discipline of four year suspension be ameliorated by this Court. In this respect, respondent points out that the conversation, which asked if the client would be amenable to bribing a public official, was an isolated incident, was connected with no overt act to accomplish the goal and no approach was ever made to a public official on the subject.

Assuming, as it appears from the evidence, that the respondent's improper conduct was limited to raising the issue and suggesting the effacy of that tactic, the conduct weighed here is a serious departure from that required of any member of this Bar. For any system of administration of public justice to be both effective and suitable as an institution in a democratic state, the ultimate authority must be

that system of law which is instituted by the people, and not the people that administer it. This is a state ruled by law and not by men. The existence of justice without the trappings of the appearance of justice is less than enough to satisfy the legitimate demands of the citizens of the state for an ordered and well-regulated system of government. It is not sufficient in this society that conflict be resolved (or crime be punished) fairly as a matter of ultimate fact by the justice system. The administration of justice must also inspire the faith of those governed in the prospect of fair resolution, both now and in the future. While the respondent's conduct may not have proceeded to action and violated the letter of the criminal law it was precisely that type of conduct which of necessity must undermine respect for the administration of justice and the faith of the people in a rule of law over men. Consequently, little comfort is found in the fact that the words spoken did not ripen into conduct. The words were spoken by an attorney, an officer of the court. The suggestion that justice is to be had for a price must, of necessity, foster apprehension and mistrust in the administration of justice. The fact that they were spoken by an officer of this Court is most unfortunate. When the conduct examined here is viewed from the perspective of the public officials who were said to be receptive to such a scheme, the personal harm done to their reputation in the community is self-evident.

A disciplinary action involving solicitation of a bribe under differing circumstances is seen in the case of *State ex rel. Oklahoma Bar Association v. James*, 463 P.2d 972 (Okl.1969). There appears language which is apropos here.

> ... The fact that Respondent called it an attempt to solicit compaign funds is wholly immaterial. Such activities ... brings shame and disrepute to all members of the bench and bar, and cannot do else, if continued, but to destroy our system of justice which, in a free society, depends for its effectiveness upon the continued confidence and trust of the people. The people must be able to rely on the integrity and honesty of their judges and lawyers, and it is the duty of this Court, whenever conduct of a lawyer, such as reflected by this record, is brought to its attention, to prevent such individual from continuing to enjoy the solemn trust and high responsibility with which he was invested as a member of the Bar of this State.

This Court stated that solicitation of a bribe by a judicial officer, which in at least one instance was actually paid, is conduct warranting disbarment in the case of *State ex rel. Oklahoma Bar Association v. James, supra.* In the case of *State ex rel. Oklahoma Bar Association v. Scanland*, 475 P.2d 373 (Okl.1970), this Court determined that offering a bribe to a police officer to remove official records for destruction was found to be an offense warranting disbarment. See also *In re Simpson*, 79 Okl. 305, 192 P. 1097 (1920) and *State ex rel. Oklahoma Bar Association v. Tallent*, 299 P.2d 162 (Okl.1956). Here, it is true, no attempt was made to show a completion of the act. The harm done to the reputation of the judicial system in general, and the reputation of the bench and bar in particular, in the eyes of the public, remains much the same.

■ This Court has stated again recently that the purpose of a disciplinary proceeding is not to punish a legal practitioner, but to safeguard the interest of the public, to protect it, and preserve the public confidence in the legal profession and the entire judicial system. *State ex rel. Oklahoma Bar Association v. Raskin*, 642 P.2d 262 (Okl.1982). There the paramount goal of disciplinary proceedings was identified as preservation of public confidence in the entire Bar.

■ The Court is impressed by the harm caused to the public's perception of the judicial system as a whole, rather than the mitigating factor we are referred to. That ameliorating factor is encompassed in the fact that the record shows no attempt was made to actually offer a bribe to a public official, and indeed, there is no evidence that contradicts the respondent's assertion that he intended to do nothing but test the

honesty of his client. In either event there is only little difference in the harm inflicted upon the confidence of the public in the judicial system and the Bar as a whole.

In this case maintenance of the public confidence in the rule of law requires substantial disciplinary action. Accordingly, this Court finds from an independent examination of the evidence presented to the Trial Panel that the discipline of a four-year suspension is both warranted and necessary and the determination is made that the respondent, Harry C. Evans, should be, and by this opinion is, suspended from the practice of law for the period of four years.

IT IS ORDER THAT THE RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR THE PERIOD OF FOUR YEARS.

The cost of the proceeding shall be borne by the respondent.

DOOLIN, C.J., and HODGES, LAVENDER, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., concurs in result by separate opinion.

SIMMS, J., dissents by separate opinion.

OPALA, Justice, concurring in result.

I cannot fully accede to the court's pronouncement nor to its *de novo* findings of fact. In my view of the record the gravamen of the respondent's professional dereliction for which disciplinary sanctions were sought and are imposed today lies not so much in his false insinuations that certain public officials might be approached to accept a payoff or bribe in the form of campaign contributions—a violation of DR9-101(C), Code of Professional Responsibility,

5 O.S.1981 Ch. 1, App. 3 [1]—but more so in inducing his client's hope and belief that the client was paying the respondent *not only* for services rendered or to be rendered as a lawyer in the case, but also for respondent's represented capability to obtain favors from key officials which would prevent the criminal charge, then under investigation, from being filed or, at least, would assure lenient treatment for the client's offense of lewd molestation, if prosecution were to follow.

In short, my view is that the respondent's transgressions consist mainly of *accepting an illegal fee*, in breach of DR2-106(A) of the Code,[2] upon an oblique, if not direct, promise that he might use improper means to bring about a favorable end to the pending criminal investigation or to the charge, if one were filed.

Because respondent's misconduct as a licensed practitioner[3] seriously undermines public confidence in the integrity of the legal profession,[4] it warrants the four-year suspension recommended to this court as a fit sanction to be imposed.

SIMMS, Justice, dissenting:

I must respectfully dissent. Conceding the four year suspension may be viewed by some as substantial punishment for Respondent's transgressions, I sincerely believe disbarment is warranted under the facts of this case.

Respondent's act of soliciting a large sum of money from a client with the representation that the path of justice can somehow be altered by making substantial "campaign contributions" to public officials, who incidentally were lawyers, is reprehensible, as well as illegal.

---

1. DR9–101(C), Code of Professional Responsibility, 5 O.S.1981 Ch. 1, App. 3, provides: *"A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."* [Emphasis mine.]

2. DR2–106(A), Code of Professional Responsibility, 5 O.S.1981 Ch. 1, App. 3, provides: "A lawyer *shall not enter into an agreement for, charge, or collect an illegal* or clearly excessive *fee."* [Emphasis mine.] See *State ex rel. Oklahoma*

*Bar Ass'n v. Fore,* Okl., 562 P.2d 511, 514–515 [1977].

3. The acts complained of in this disciplinary proceeding, although known to law enforcement and to the prosecutorial service, did not result in respondent's criminal prosecution.

4. *State, ex rel., Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 268 [1982].

The actions of Respondent undermine the public perception of the very foundation of our legal system; that justice is not for sale but is given to all, equally.

As this Court observed in *State, ex rel., Bar Assn. v. Raskin*, Okl., 642 P.2d 262 (1982):

" * * * Whatever the reason for his misconduct, our concern is and must be for the protection of the public, the preservation of its confidence in the legal profession and for the maintenance of the professional standards for lawyers. Our own integrity as the lawyers' licensing authority is also at stake here."

OPALA, J., joins in that part of the dissent which discusses the gravity of the respondent's offense.