**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Earl W. WOLFE, Respondent.**

**SCBD No. 4110.**

Supreme Court of Oklahoma.

April 15, 1997.

KAUGER, Chief Justice:

The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Earl W. Wolfe, with four counts of professional misconduct—unprofessional behavior in a client relationship; failure to respond timely to a grievance; the unauthorized practice of law; and noncompliance with disciplinary rules involving a prior suspension. Although divided into four charges, the counts involve multiple violations of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A and the Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A.[1] There is clear and convincing evidence of the ethical violations.[2] We find that the respondent's unauthorized practice of law while under a disciplinary suspension coupled with other misconduct, his repeated appearances before this Court on disciplinary matters,[3] discipline imposed in similar cases and the failure to respond timely to the grievance warrant disbarment and the imposition of $1,617.32 in costs.[4] We do not agree with the respondent that he was treated unfairly or that he was denied due process in the grievance proceedings. Nevertheless, in disciplinary matters involving repeat offenders, consolidation of time-related offenses is necessary to avoid the waste of judicial resources, to provide a clear picture of the respondent's problems and shortcomings, and to ensure that the appropriate discipline is imposed.

Dan Murdock, General Counsel, Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Craig Tweedy, Sapulpa, for Respondent.

1. The first count encompassed the respondent's failure to provide competent representation [Rule 1.1, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A], his neglect of legal matters [Rule 1.3, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A], the lack of communication with the client [Rule 1.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A], and the failure to effectively withdraw representation after suspension from the practice of law [Rule 1.16, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A]. The remaining three counts consisted of charges that the respondent: 1) failed to respond timely to the grievance [Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A; Rule 8.1(a), Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A]; 2) misrepresented his professional status to his client, engaged in conduct prejudicial to the administration of justice and participated in the unauthorized practice of law [Rules 5.5 and 8.4(d), Rules of Professional Conduct, 5 O.S.

1991, Ch. 1, App. 3–A]; and 3) failed to comply with regulations governing a prior suspension [Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A].

2. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Meek*, 927 P.2d 553–54 (Okla.1996); *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 867 P.2d 1279, 1281 (Okla.1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 810 P.2d 826, 830 (Okla.1991).

3. *State ex rel. Oklahoma Bar Ass'n v. Meek*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Moss*, 682 P.2d 205, 207 (Okla.1983).

4. Rule 6.13, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A; Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A.

## FACTS

In the spring of 1993, Richard Steele (Steele/client) approached the respondent about filing a civil rights action against the Ninnekah Public Schools (public schools). The respondent informed Steele that he had pending disciplinary problems, but he agreed to take the case on a contingency fee basis indicating that someone else in the firm might have to be responsible for the actual filing of pleadings. The respondent was practicing under the firm name, Earl Wolfe and Associates, but there were no other attorneys in his office at that time.

A complaint was filed in the United States District Court for the Western District on April 13, 1993. Answers to defense interrogatories were due on June 11, 1993. The respondent forwarded the interrogatories to Steele who returned the answers within two or three days. When defense counsel did not receive the answers by the due date, she attempted to phone the respondent. The call was not returned. After receiving a letter from the defense counsel concerning the tardy responses, the respondent contacted her and he promised that she would have the answers early in the week of June 21st. No answers were received and a motion to compel interrogatory answers was filed on July 2, 1993. When Steele got a copy of the motion to compel in the mail, he contacted the respondent who assured Steele that he had adequate time to file the requested information and that he had never been untimely in a court filing. Because no response to the interrogatories was received by the defense, the motion to compel was sustained on September 13, 1993.

This Court suspended the respondent from the practice of law for six months on June 15, 1993.[5] Based on the discipline, the federal court suspended the respondent from prac-

ticing in the western district effective July 8, 1993.[6] The respondent told Steele of his state court suspension, but he indicated that he would be able to continue to represent him pending a ruling on a petition for rehearing filed in response to *State ex rel. Oklahoma Bar Ass'n v. Wolfe (Wolfe I )*, 864 P.2d 335, 339 (Okla.1993). The respondent prepared a *pro se* appearance for Steele's signature which was filed on August 12, 1993.[7] On September 9, 1993, the federal court gave the respondent five days to provide proof of his ever having been admitted to practice in the western district. Because he had never been admitted by rule or by motion, the respondent did not comply and the motion to vacate his federal court suspension was denied.

The school district filed for summary judgment on September 22, 1993. On October 15, 1993, the federal court sustained the motion based on Steele's failure to respond. On October 23, 1993, Steele met with the respondent who had him sign a blank piece of paper. The signature page was to have been attached to a motion to reconsider which the respondent assured Steele he would file. No motion to vacate the summary judgment was filed. When Steele called the respondent during the fall of 1993 to check on the status of the case, the respondent told him that he had heard nothing from the federal court. Steele was clearly under the impression that a decision on the motion to reconsider was pending, and that the respondent continued to be his legal representative.[8]

On January 22 and again on February 1, 1994, after repeated attempts to obtain information from the respondent concerning the motion to vacate and the status of his case, Steele wrote the federal judge presiding over his cause and he requested information. On February 14, 1994, the federal judge ordered

---

5. Rehearing was filed and the suspension became effective on November 1, 1993. *State ex rel. Oklahoma Bar Ass'n v. Wolfe (Wolfe I )*, 864 P.2d 335, 339 (Okla.1993).

6. Because of the federal court's concern that Steele had not received a copy of the suspension order, a second order issued on July 28, 1993. The respondent was also suspended from practice before the northern district of the federal court on July 15, 1993.

7. Although the *pro se* petition was filed in federal court, the respondent signed an order dated three days later as counsel for Steele.

8. Steele testified before the trial panel that the first time the respondent told him he was suspended and could not act as his attorney was in April of 1994. Transcript of proceedings, April 12, 1996, pp. 82–84.

the respondent to answer the allegations of inactivity and neglect. No response to the order was filed. Nevertheless, the federal court vacated the summary judgment order, and it granted Steele thirty days to obtain successor counsel and to respond to the motion for summary judgment. Steele was unable to find a new attorney and no response was filed. Summary judgment was sustained in the school district's favor on July 21, 1994.

The respondent insists that he informed Steele of his suspension and of his inability to represent him after the petition for rehearing was denied by this Court in November of 1993, and that he urged him to obtain new counsel. However, Steele testified that he was unaware that the respondent was unable to proceed as his attorney until after April 15, 1994——at approximately the time the federal court gave him the opportunity to again respond to the motion for summary judgment. The respondent admits that between July and November of 1993, while

barred from practice in the federal court, he assisted Steel in preparing pleadings to be filed in that jurisdiction.[9]

The cause originally initiated from a complaint filed by the federal judge presiding over the Steele matter,[10] and it was instituted as a Rule 6 proceeding.[11] The Bar Association mailed a grievance letter to the respondent on March 8, 1995.[12] When no answer to the grievance was received, a second grievance letter was mailed on April 7, 1995, requiring a response within five days. The respondent did not reply to the second request for information until April 24, 1995.[13] Wolfe admits that, after he was suspended by the federal court, he prepared documents for filing in the federal case and that he promised to assist in getting the motion for summary judgment set aside.[14] The respondent did not list Steele as a client in the affidavit filed with the Bar Association pursuant to Rule 9.1, Rules Governing Disciplinary

9. Respondent's proposed findings of fact and conclusions of law provides in pertinent part:

"... 19. The undisputed evidence is that after July 8, 1993 and prior to November 1, 1993, the Respondent assisted Steele in preparing pleadings to avoid case defaults and did so without compensation...."

10. Rule 8.3, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A. The order filed in the Steele case in federal court provides in pertinent part:

"... Correspondence from plaintiff also reports that plaintiff's efforts to get any dependable responses or action from his counsel, Earl Wolfe, have been entirely unsuccessful. In the meantime, Wolfe has been suspended from practice by the Oklahoma Supreme Court and by order of this court. Further, Wolfe has ignored orders of this court to respond to plaintiff's complaint of his inaction and remains in noncompliance with such orders to date. The matter of Mr. Wolfe's unprofessional conduct has been referred to the Oklahoma Bar Association and is under further consideration by this court...."

11. Rule 6.1, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

12. Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

13. In his letter, the respondent listed two reasons for his untimely response: 1) that, in a conversation with his attorney, the General Counsel of the

Bar Association had agreed not to pursue a grievance filed by a client other than Steele; and 2) that, when the original grievance letter was received, the respondent's attorney spoke with the General Counsel who indicated that although he was not aware of the mailing of the grievance letter, the respondent would need to reply. During the proceedings before the trial panel, the respondent indicated a third reason that his response to the grievance was untimely. He asserted that the allegations in the grievance were vague and that all the enclosures indicated to be accompanying the grievance letter were not mailed. Considering the detail with which the respondent's letter outlines his actions in relation to the Steele matter and the statement in the response that, "I was not privy to any of Mr. Steele's correspondence with Judge Thompson which is attached to your letter", this argument is unpersuasive.

14. The respondents letter to the Bar Association of April 24, 1995, provides in pertinent part at p. 4:

"... Sometime after October 14, 1993, I received a copy of the Judgment entered October 14, 1993 ... About the same time, I received a copy of the Judgment, Mr. Steele called me trying to figure out what this Judgment was.... At that time, I told him that the only thing he could do would be to try to get the judgment set aside and get the court to consider any response to the motion he could make. I told him I would assist him with the preparation of those documents, but before I could do so, the Petition for Rehearing was effectively

Proceedings, 5 O.S.1991, Ch. 1, App. 1-A, or give him written notice of the suspension.

On June 18, 1996, in *State ex rel. Oklahoma Bar Ass'n v. Wolfe (Wolfe II)*, 919 P.2d 427, 432 (Okla.1996), we suspended the respondent for two years and one day for the misuse of a trust account, failing to file income tax returns, neglecting client cases and failing to respond timely to grievances. The trial panel issued its report relating to the current charges of misconduct on October 21, 1996, recommending disbarment and the imposition of costs. Contending that the Bar Association's reply unfairly prejudiced his rights and that he was denied due process, the respondent applied to file his surreply on January 27, 1997.[15]

## I.

### THERE IS CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE MULTIPLE CHARGES OF ATTORNEY MISCONDUCT.

 Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[16] The respondent asserts that there is no evidence of misconduct. The Bar Association argues the record is sufficient to support the multiple charges levied against the respondent.

 The facts present clear and convincing evidence of the ethical violations. It is obvious that: 1) the representation which Steele received was not competent; 2) Steele's case was neglected; 3) the respon-

dent's communication with his client was not candid; 4) the respondent misrepresented his professional status to his client by not effectively withdrawing from representation until after the motion for summary judgment was vacated in April of 1994—seven months after he was suspended by the federal court, and five months after the suspension imposed in *Wolfe I* became operative; and 5) the respondent engaged in the unauthorized practice of law and conducted himself in a manner that was prejudicial to the administration of justice. It is equally clear that the response to the grievance was untimely—having been made only after a second request for information and forty-seven days after the original grievance letter was mailed—and that the respondent failed to comply with Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1-A, when he did not give Steele written notification of his suspension in *Wolfe I* or include Steele's name as a client on the affidavit filed with the Bar Association.

## II.

### THE UNAUTHORIZED PRACTICE OF LAW WHILE UNDER A DISCIPLINARY SUSPENSION COUPLED WITH OTHER MISCONDUCT, THE RESPONDENT'S DISCIPLINARY HISTORY, AND DISCIPLINE ADMINISTERED IN SIMILAR CASES WARRANT DISBARMENT AND THE PAYMENT OF COSTS.

 In disciplinary matters, this Court possesses exclusive original jurisdiction.[17]

---

denied by the Supreme Court and my suspension began...."

**15.** The respondent's application to file the surreply is hereby granted.

**16.** Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1-A; *State ex rel. Oklahoma Bar Ass'n v. Meek*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2, supra.

**17.** Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1992, Ch. 1, App. 1-A, provides in pertinent part:

"This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any and all persons licensed to practice law in Oklahoma, hereinafter referred to as lawyers and any other persons, corporations, partnerships, or any other entities (hereinafter collectively referred to as 'persons') engaged in the unauthorized practice of law...."

*State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989).

We are not bound by agreed findings, conclusions of law or recommendations for discipline.[18] Our review is *de novo* in considering the record presented as well as the recommendations for discipline.[19] The responsibility of this Court in disciplinary proceedings is not to punish, but to inquire into and to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[20]

■ Members of the bar are on notice that this Court cannot, and will not tolerate, utter disregard for our orders of suspension.[21] To do so, would require us to ignore our paramount duty of preserving public confidence in the entire bar.[22] Nevertheless, the respondent disregarded the discipline imposed in *Wolfe I* by continuing to provide legal advice to his client and by preparing documents for filing in the federal court——from which he was suspended from practice by order.[23] Additionally, the respondent misled Steele as to the status of his case when he failed to file the motion to reconsider the summary judgment order as promised. Although he continued to provide Steele with legal advice, he did not list him as a client or give him written notification of his suspension in *Wolfe I*.

In *State ex rel. Oklahoma Bar Ass'n v. Holden*, 925 P.2d 32, 37 (Okla.1996), we suspended an attorney from the practice of law for two years and one day for the unautho-

rized practice of law while under a disciplinary suspension. We disbarred an attorney in *State ex rel. Oklahoma Bar Ass'n v. Downing*, 863 P.2d 1111, 1115 (Okla.1993), who, while under suspension, engaged in the unauthorized practice of law, lied to a client about the status of a case and about the attorney's ability to continue representation, and failed to act with reasonable diligence and competence. In *State ex rel. Oklahoma Bar Ass'n v. Butler*, 903 P.2d 872, 875 (Okla.1995), the attorney was barred from the practice of law for his repeated conduct in concealing his derelictions from clients and his refusal to accept responsibility for his misconduct in multiple disciplinary proceedings.

The pattern of conduct of the respondent, especially his neglect of client matters, his refusal to take responsibility for his actions and his disregard for the disciplinary process demonstrated through his failure to timely respond to the grievance proceedings in *Wolfe I*, in *Wolfe II* and here, demonstrates that mere suspension from the practice of law has not been sufficient to curb the respondent's unprofessional behavior. We find that the respondent's misconduct, his disciplinary history, his unauthorized practice of law, and the discipline administered in similar cases warrant disbarment.

The Bar Association submitted an application to assess costs of $1,617.32. The respondent filed no response to the application. The costs are approved.[24]

---

**18.** *State ex rel. Oklahoma Bar Ass'n v. Leigh*, 914 P.2d 661, 667 (Okla.1996); *State ex rel. Oklahoma Bar Ass'n v. Butler*, 848 P.2d 540, 542 (Okla.1992).

**19.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2 at 1284, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

**20.** *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 904 P.2d 597, 602 (Okla.1995); *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 848 P.2d 543, 545 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Colston*, 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Ass'n v. Moss*, 682 P.2d 205, 207 (Okla.1983).

**21.** *State ex rel. Oklahoma Bar Ass'n v. Holden*, 925 P.2d 32, 37 (Okla.1996); *State ex rel. Okla-*

*homa Bar Ass'n v. Downing*, 863 P.2d 1111, 1116 (Okla.1993).

**22.** *State ex rel. Oklahoma Bar Ass'n v. Holden*, see note 21 at 38, supra; *State ex rel. Oklahoma Bar Ass'n v. Evans*, 747 P.2d 277, 280, 85 A.L.R.4th 557 (Okla.1987).

**23.** The respondent asserts that this was not the unauthorized practice of law because filings were in federal rather than in state court. This is unconvincing. Rule 5.5, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, prohibits the practice of law in a jurisdiction where to do so violates the rules of that jurisdiction.

**24.** Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

## III.

**ALTHOUGH CLAIMS OF UNFAIRNESS AND DUE PROCESS VIOLATIONS ARE NOT SUPPORTED BY THE RECORD, IN DISCIPLINARY MATTERS INVOLVING REPEAT OFFENDERS, CONSOLIDATION OF TIME–RELATED OFFENSES IS NECESSARY TO AVOID THE WASTE OF JUDICIAL RESOURCES, TO PROVIDE A CLEAR PICTURE OF THE RESPONDENT'S PROBLEMS AND SHORTCOMINGS, AND TO ENSURE THAT THE APPROPRIATE DISCIPLINE IS IMPOSED.**

■ In addition to his argument that the charges against him were not supported by clear and convincing evidence, the respondent asserts that the Bar Association engineered circumstances which would result in his being disbarred. He also raises due process challenges related to the lack of the sufficiency of notice contained in the grievance letters received from the Bar Association. The due process allegations associated with lack of sufficient notice to answer the grievance letter are unconvincing.[25] We are also not persuaded that the Bar Association planned to institute a disciplinary proceeding subsequent to our consideration of misconduct presented in *Wolfe II* for the sole purpose of ensuring that the respondent be disbarred. Nevertheless, this Court harbors sincere concerns about the Bar Association's procedures in matters involving repeat offenders in disciplinary matters.

Recently, this Court consolidated two complaints against an attorney. In *State ex rel. Oklahoma Bar Ass'n v. Perry*, 936 P.2d 897 (Okla.1997), the attorney had been charged with multiple counts of misconduct in two different proceedings—one complaint was filed in March and the other in August of 1996, only four months apart. The trial panels in the two proceedings recommended diverse punishments—one a six-month suspension and the other a period of two years and one day. This Court consolidated the two causes for simultaneous consideration and disbarred the attorney. Had it not been for this Court's vigilance, the attorney in *Perry* would have been subject to multiple proceedings and a piecemeal determination of the quality of his conduct. Additionally, we cannot say what discipline would have been imposed had the two incidents been considered separately.

We have disciplined the respondent on three separate occasions—in 1993, *Wolfe I;* in 1996, *Wolfe II;* and today in *Wolfe III,* only seven months after the pronouncement in *Wolfe II.* Our concerns with the procedures of the Bar Association arise from the fact that: 1) the conduct complained of in *Wolfe II* was being investigated at the same time that the Court considered the respondent's misconduct in *Wolfe I;*[26] 2) the actions complained of here occurred during late 1993 and early 1994—almost simultaneously with the actions prosecuted in *Wolfe II;* and 3) by the General Counsel's own admission, the misconduct complained of here could have been consolidated with the complaint in *Wolfe II.*[27] The hearing in *Wolfe II* was conducted on May 9, 1995, a month after the Bar Association had received the respondent's response to the grievance.

---

**25.** See discussion, footnote 13, supra. Fundamentals of due process are applicable to lawyer disciplinary proceedings. *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 914 P.2d 644, 649 (Okla. 1995).

**26.** *State ex rel. Oklahoma Bar Ass'n v. Wolfe* (*Wolfe II*), 919 P.2d 427, 432 (Okla.1996), provides in pertinent part at p. 429:
"... Several of the counts occurred after the 1993 suspensions and others were being investigated at the time of the suspension...."

**27.** Transcript of proceedings, April 12, 1996, the General Counsel testified before the trial panel concerning the respondent's allegations that there had been an agreement either to not pursue the instant charges or to consolidate them with the charges in *Wolfe II.* The transcript provides in pertinent part at p. 229:

"... And on May 9th [1995], some 60 days thereafter, if Mr. Tweedy had wanted to raise that issue and have them all included, then he could have asked for a continuance and see where that grievance went and it could have been included in that grievance at that time. And it could have been brought up in the May 9th hearing, and it wasn't. There was no discussion had ..."

Although we recognize that respondents' charged with misconduct often prolong investigations of complaints through their failure to answer or timely to reply in the investigative process, the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, contemplate that investigations will be conducted with speed and efficiency.[28] While we understand that the Bar Association cannot consolidate multiple complaints until it has completed its investigation and found each to have a basis in fact, the piecemeal analysis of conduct occurring over an identifiable time period is difficult and a waste of judicial economy. It is also clear that, in this instance, consolidation would have been appropriate. The conduct complained of occurred during the same time span as did the actions considered in *Wolfe II*——1993 and 1994. The hearing in the instant cause did not convene until April 12, 1996. The grievance was originally mailed to the respondent on March 8, 1995. Although the respondent's reply was untimely and not returned until April 7, 1995, it was in the hands of the Bar Association a month before the hearing was conducted in *Wolfe II*. There was also testimony before the trial panel indicating that consolidation would have been possible.[29]

The grouping of complaints for lawyer discipline in no way diminishes the gravity of the misconduct. Rather, it provides this Court with a clearer picture of an attorney's problems and better enables us to assess the proper sanctions to achieve the goals of lawyer discipline—deterrence of others and protection of the public, of the courts and of the legal profession.[30] Without a complete picture of the misconduct occurring within a defined time span, it is extremely difficult to gauge the necessary sanctions. Consolida-

tion of time-related complaints should be utilized to preserve judicial economy, to avoid subjecting respondents to piecemeal litigation, and to ensure that the appropriate discipline is imposed.

## CONCLUSION

The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[31] Upon a *de novo* review of the record, we find that the respondent: failed to provide competent representation or to communicate with his client; neglected legal matters; misrepresented his professional status and did not withdraw from representation or comply with the regulations governing his suspension; was untimely in his response to the grievance; engaged in conduct prejudicial to the administration of justice; and participated in the unauthorized practice of law. This Court will not tolerate disregard for its orders of discipline.[32]

The attorney's actions, coupled with the circumstances of his prior suspensions in *State ex rel. Oklahoma Bar Ass'n v. Wolfe* (*Wolfe II* ), 919 P.2d 427, 432 (Okla.1996) and in *State ex rel. Oklahoma Bar Ass'n v.Wolfe* (*Wolfe I* ), 864 P.2d 335, 338 (Okla.1993), demonstrate an indifference to his obligations as a member of the Oklahoma Bar Association. The conduct warrants disbarment and the payment of costs in the amount of $1,617.32.

In imposing the most grievous of disciplines, we express our concern relating to piecemeal litigation of bar disciplinary matters. If we are to sanction transgressing

---

**28.** Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A requires that the attorney complained of through the filing of a grievance be notified "immediately". Rule 6.6, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, requires that a trial panel be appointed within ten days of the filing of a complaint.

**29.** It is also clear that the Bar Association understands that the option of consolidation is available for multiple complaints involving repeat offenders. *State ex rel. Oklahoma Bar Ass'n v. Butler*, 903 P.2d 872–73 (Okla.1996).

**30.** *State ex rel. Oklahoma Bar Ass'n v. Bolton*, see note 20, supra; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, see note 20, supra; *State ex rel. Oklahoma Bar Ass'n v. Colston*, see note 20, supra; *State ex rel. Oklahoma Bar Ass'n v. Moss*, see note 20, supra.

**31.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2 at 1287, supra; *Tweedy v. Oklahoma Bar Ass'n*, 624 P.2d 1049, 1052 (Okla.1981).

**32.** *State ex rel. Oklahoma Bar Ass'n v. Downing*, see note 21, supra.

attorneys effectively, we must be advised of all time-related grievances. Otherwise, our resources are wasted, and we are not provided with a clear picture of a respondent's problems and shortcomings. It is incumbent upon the Bar Association to monitor the consolidation of complaints for consideration by this Court.

**RESPONDENT DISBARRED. COSTS IMPOSED.**

HODGES, HARGRAVE, ALMA WILSON and WATT, JJ. concur.

OPALA, Justice, with whom LAVENDER, J., joins, concurring in part and dissenting in part:

I *concur* in Parts I and II of the court's opinion and in the respondent's disbarment; I *dissent* from the court's Part III analysis that allocates to the Bar prosecution the blame for not consolidating the several proceedings then pending against this respondent. For my own views see State ex rel. Oklahoma Bar Association v. Wolfe, Okl., 919 P.2d 427, 435–439 (1996) (OPALA, J., dissenting from respondent's suspension.).

SUMMERS, V.C.J., and SIMMS, J., disqualified.