2013 OK 78

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**James David OGLE, Respondent.**

**SCBD Nos. 5940, 5902.**

Supreme Court of Oklahoma.

Oct. 1, 2013.

See also 291 P.3d 198.

Gina Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for the Complainant.

Mack K. Martin, Martin Law Office, Oklahoma City, Oklahoma, and G. Derek Chance, Babbit, Mitchell & Chance, Oklahoma City, Oklahoma, for the Respondent.

EDMONDSON, J.

¶ 1 James David Ogle (Respondent), OBA No. 17476, was admitted to practice law in the State of Oklahoma in 1997. He currently stands suspended in SCBD 5902 pursuant to Rules 7.1 and 7.2 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, ch. 1, app. 1–A. A complaint was brought pursuant to Rule 6, RGDP against the Respondent in SCBD 5940. The matters were joined for hearing before a trial panel of the Professional Responsibility Tribunal (PRT), for briefing and for consideration by this Court, and are resolved by a single opinion.

¶ 2 The Respondent was a partner, along with Josh T. Welch, in the law firm Ogle & Welch, located in Oklahoma City. The Respondent's nephew, Robert Samuel Kerr, IV, joined the firm as a legal intern and then as an associate after being admitted to the Oklahoma Bar Association in 2006. In 2007, Ogle & Welch represented a client charged with the misdemeanor crime of driving under the influence of alcohol. Kerr was to represent the client before the Department of Public Safety (DPS). The firm actively took part in a series of transactions that led to an Edmond police officer receiving money as a bribe so that he would not appear at the DPS hearing. The firm made contact with a former Edmond police officer, Chris Caplinger, to assist in the bribe offer. An account of the facts appears in *State ex rel. Oklahoma Bar Ass'n v. Kerr,* 2012 OK 108, 291 P.3d 198.

¶ 3 Ogle was charged on July 30, 2010, in the District Court of Oklahoma County in *State of Oklahoma v. James David Ogle, Oklahoma County District Court, CF–2010–5113,* with the felony crime of Bribing an Officer in violation of 21 O.S. § 381, On August 15, 2012, the felony was reduced to a misdemeanor charge of Obstruction of a Public Officer in violation of 21 O.S. § 540, and the Respondent entered a plea of guilty to the misdemeanor offense. The Respondent received a two-year sentence, deferred. The Oklahoma Bar Association (Bar) transmitted certified copies of the information and judgment and sentence on a misdemeanor plea of guilty to the Chief Justice and Rule 7 proceedings were commenced against Ogle in SCBD 5902.

¶ 4 On August 22, 2012, this Court entered an Order of Immediate Interim Suspension pursuant to Rule 7. Ogle was given an opportunity to show cause in writing why a final order of discipline should not be imposed. He filed a notice of intent to waive or not show cause. Under Rule 7, the information, judgment and deferred sentence are conclusive evidence of conviction of the crime upon which the proceeding is based and warrant the imposition of professional discipline. We directed the Professional Responsibility Tribunal (PRT) to conduct a hearing and make a recommendation to this Court as to the final discipline to be imposed.

¶ 5 On October 5, 2012, the Bar filed a complaint pursuant to Rule 6, RGDP, alleging that the Respondent violated Rules 1.15, 8.3(a) and 8.4(a)(c) of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, ch. 1, app. 3–A, and Rule 1.3, RGDP. Under Rule 6, the Bar has the burden of establishing every violation by clear and convincing evidence. An order of this Court dated October 29, 2012, granted the Bar's motion to join the two proceedings for hearing, briefing and disposition.

¶ 6 A hearing was held on January 16, 2013, before a trial panel of the PRT. The Respondent was present and represented by counsel. The Bar called its investigator, Tommy Butler, and the Respondent as witnesses. The Respondent's witnesses were

Drew Neville, Honorable Lori Walkley, John Carwile, Daniel G. Webber, Jr., Charles E. Geister, III, and Dean Valerie K. Couch. The panel took evidence in mitigation on the Rule 7 charges. On the Rule 6 charges, the panel found that Ogle violated Rule 1.3, RGDP, and Rules 8.3(a), 8.4(b), 8.4(c) and 8.4(d) of the Oklahoma Rules of Professional Conduct.[1] The trial panel found that the complainant failed to prove by clear and convincing evidence a violation of Rule 1.15, ORPC.[2]

¶ 7 The trial panel recommended to this Court a suspension of two years and one day as appropriate discipline. The Complainant seeks disbarment. Ogle asserts that suspension for two years or less would be sufficient discipline to ensure the protection of the public, the preservation of the integrity of the Bar and the deterrence of similar conduct. We treat the Respondent's recommendation as a request for leniency. The Respondent has admitted that he knowingly participated in the bribe after he learned about it. He has admitted violation of the Rules of Professional Conduct by failing to stop or report the conduct and interfering with the administration of justice. On de novo review of the record, we find that the remaining Rule 6 allegations were established by clear and convincing evidence. It

remains for this Court to determine the level of discipline to be imposed in both the Rule 6 and Rule 7 matters.

■ ¶ 8 Although each proceeding is unique, the Supreme Court is guided by similar cases in determining the appropriate discipline to be imposed. *State ex rel. Oklahoma Bar Ass'n v. Golden*, 2008 OK 39, 201 P.3d 862, amended on denial of rehearing. Disciplinary proceedings against the other two conspirators have concluded. Josh T. Welch resigned from the Oklahoma Bar Association pending the disciplinary proceedings against him in SCBD 5868. Welch admitted making arrangements to discourage a police officer from appearing to testify in a hearing before the DPS concerning the revocation of driving privileges. *State ex rel. Oklahoma Bar Ass'n v. Welch*, 2012 OK 83, 292 P.3d 510. Resignation pending disciplinary proceedings is tantamount to disbarment and Welch may not apply for reinstatement for five years from the date of his interim suspension. *In re Reinstatement of Jones*, 2006 OK 33, 142 P.3d 380.

■ ¶ 9 In *State ex rel. Oklahoma Bar Ass'n v. Kerr*, 2012 OK 108, 291 P.3d 198, we suspended Kerr for a period of two years and one day, commencing on the date of his interim suspension. Suspension for two years and one day requires the lawyer to

1. **Rule 1.3. Discipline for Acts Contrary to Prescribed Standards of Conduct.**
 The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.
 **Rule 8.3. Reporting Professional Misconduct**
 (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate professional authority.
 * * *
 **Rule 8.4. Misconduct**
 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice;
 * * *

2. Rule 1.15 details a lawyer's responsibility for safekeeping the property of clients and third parties. Ogle admitted that he signed the check and letter transmitting the funds and delivered them to Caplinger. The documents referred to another client, for whom work had not been performed. In its brief to this Court, the Bar concedes that it failed to meet its burden of proof on this allegation. We have reviewed the record and find that a violation of Rule 1.15 was not established by clear and convincing evidence. The check was drawn on the firm's operating account and there was no evidence that funds of the other client were withdrawn from the trust account as a result.

seek reinstatement to the Oklahoma Bar Association and to prove the grounds for reinstatement by clear and convincing evidence. We found as mitigating evidence that Kerr did not initiate the illegal scheme and that he acted under the direction of his supervisors, Josh Welch and David Ogle.

¶ 10 Judicial officers and public officials have been disbarred for soliciting bribes. In *State ex rel. Oklahoma Bar Assn. v. Scanland,* 1970 OK 94, 475 P.2d 373, 376, the respondent was an assistant district attorney who offered a bribe to a police detective to remove the arrest record of a certain individual and deliver it to him for destruction. The evidence established the charges and Scanland was disbarred. We stated that fewer things are more damaging to public respect for the administration of justice than a corrupt public prosecutor. We could think of few offenses more serious in the eyes of the public than for one who speaks and acts with the authority and prestige of such office to attempt to corrupt a police officer. We compared a District Attorney, or his assistant, as a minister of justice to a degree second only to judges.

¶ 11 In *State ex rel. Oklahoma Bar Assn. v. Hall,* 1977 OK 117, 567 P.2d 975, 978, we disbarred former Governor David Hall, who extorted a bribe to use the influence of his office to persuade the board of the Oklahoma Employees Retirement System to invest $10,000,000.00 in a particular corporation's obligations. We likened the Chief Executive as a minister of justice to that of other public officials such as district attorneys and judges, and said that using the authority of high office to extort a bribe was a crime involving moral turpitude.

¶ 12 In *State ex rel. Oklahoma Bar Association v. James,* 1969 OK 119, 463 P.2d 972, a county judge solicited a bribe on two occasions from attorneys in return for awarding them a larger fee. Throughout the proceedings, James insisted that he merely solicited funds for campaign expenses. The judge made it clear that he would extend his judicial favors only if he received financial remuneration in return. Those actions brought shame and disrepute to the bench and bar. In the cases involving public officials, we emphasized that persons who are in a position of trust are held to a higher standard because of their positions as servants of the public. James was disbarred.

¶ 13 In a case that involved an attorney who was not a public official, a client was asked if he would be willing to bribe certain public officials if necessary. *State ex rel. Oklahoma Bar Assn. v. Evans,* 1987 OK 108, 747 P.2d 277. The act of bribery was never completed. We suspended Evans for four years for violating Disciplinary Rule 9–101(C): "A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body or public official." Though Evan's improper conduct was limited to raising the issue and suggesting the efficacy of that tactic, we observed that such conduct is a serious departure from conduct required of any member of the bar. We also recognized the personal harm done to the reputation in the community of the public officials who were said to be receptive to such a bribe. 1987 OK 108, ¶ 8, 747 P.2d 277.

¶ 14 Factors considered when determining proper discipline include comparing the circumstances of the case with previous disciplinary matters, examining an attorney's past record of professional behavior and evaluating mitigating circumstances. *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, 991 P.2d 1015, 1025, corrected. Although discipline should be administered fairly and evenhandedly, the extent of discipline must be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances. Also, we must consider the deterrent effect upon the offending lawyer and other attorneys who might contemplate similar conduct in the future. *State ex rel Oklahoma Bar Ass'n v. McMillian,* 1989 OK 16, 770 P.2d 892, 899. Ogle testified that he learned of the bribe before the DPS hearing and that he signed a firm check in the amount of $750.00, along with a letter on the firm's letterhead to show the money came from another client's account instead of the firm's operating account., and gave both to Caplinger

when he came to the office. Ogle also admitted that during the investigation and before being charged, he lied to the OSBI and to District Attorney David Prater, insisting that he had no involvement in the matter. There was no evidence that Ogle initiated the scheme, but there was clear and convincing evidence that he participated in covering it up. The case was high-profile and generated a great deal of press coverage.

¶ 15 Ogle offered in mitigation the testimony of lawyers and judges who attested to his good reputation and standing in the community prior to the actions for which he was charged. They believed it was totally out of character for Ogle to behave as he did. Ogle was active in the Oklahoma County Bar Association and served on its board of directors. He served on the board of directors, and was at one time president, of the Oklahoma Criminal Defense Lawyers Association, as well as being a member of the National Association of Criminal Defense Lawyers. He was a presenter in numerous continuing legal education programs and spoke in schools whenever requested. Ogle's witnesses testified that he had been a very good lawyer, who willingly gave of his time for civic and educational matters whenever asked. Ogle has had no previous formal discipline by the OBA or any other bar association. He expressed a great deal of remorse and shame for the the effect of his actions on the legal profession and for the devastating effect that his actions caused to his family and to their financial security. We take these mitigating factors into account in determining the level of discipline to be imposed.

¶ 16 Ogle's conduct occurred during the course of his practice of law and within the attorney-client relationship. That conduct places into question his professional honesty and his dedication to the administration of justice. Such conduct, admitted by Ogle in his testimony and briefs, has brought disrepute upon the legal profession and reflects

adversely on his fitness as a lawyer. Ogle did not instigate the bribe, but he chose not to stop it or report it, and he facilitated it. He chose to say nothing when evidence of the investigation came to light. He lied to the District Attorney and others during the investigation. We consider the harm caused to the public perception of the judicial system as a whole to be more significant than the mitigating factors introduced. We agree with the recommendation of the PRT that suspension from the practice of law for a period of two years and one day is appropriate discipline in this matter.

 ¶ 17 A suspension for two years or less allows the suspended attorney to resume the practice of law upon expiration of the time period imposed. A disbarred lawyer may not seek readmission to the Oklahoma Bar Association for a term of five years. Suspension for two years and one day requires the attorney to seek readmission to the Oklahoma Bar Association in order to practice law in this state. A suspension from the practice of law for a period in excess of two years is tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred counterpart.[3] *In the Matter of the Reinstatement of Munson,* 2010 OK 27, ¶ 12, 236 P.3d 96. An applicant for reinstatement to the bar bears a heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. *In the Matter of the Reinstatement of Massey,* 2006 OK 21, 136 P.3d 610. The requirements for a lawyer seeking reinstatement are more stringent than for a lawyer who seeks admission to the bar for the first time. *In the Matter of the Reinstatement of Fraley,* 2005 OK 39, ¶ 37, 115 P.3d 842.

¶ 18 After de novo review of the record presented, we order the Respondent suspended for two years and one day, commencing from August 22, 2012, the date of his interim suspension, and he is ordered to pay

---

**3.** The factors considered in determining fitness for reinstatement to the bar are: 1) the applicant's present moral fitness; 2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession; 3) the extent of rehabilitation; 4) the seriousness of the original misconduct; 5) the conduct after resignation; 6) the time elapsed since the resignation; 7) the character, maturity and experience of the applicant when he or she resigned; and 8) present legal competence. 2010 OK 27, ¶ 13, 236 P.3d 96.

the costs of the proceeding in the amount of $1,878.05 within sixty (60) days of the date of this opinion.

**RESPONDENT SUSPENDED FOR TWO YEARS AND ONE DAY AND ORDERED TO PAY COSTS.**

¶ 19 COLBERT, C.J., REIF, V.C.J., WATT, WINCHESTER, EDMONDSON, TAYLOR, COMBS, JJ., concur.

¶ 20 KAUGER, J. and GURICH, J., not participating.